THELMA FAY RANSDELL, Appellant, v. INTERNATIONAL SHOE COMPANY.—44 S. W. (2d) 1.

Division One, November 20, 1931.

*Walter H. Juett* and *Roy Hamlin* for appellant.

*Dean Moneymaker* and *Mahan, Mahan & Fuller* for respondent.

GANTT, P. J.—An employee seeks to recover from her employer compensation for injury. In due time her claim was filed with the commission. The employer answered that the injury did not grow out of her employment.

On a hearing before a referee, a finding was made as follows:

"That Thelma Fay (Dowell) Ransdell on or about November 5, 1928, while in the employ of International Shoe Company, sustained an accidental injury arising out of and in the course of her employment resulting in permanent partial disability to her right (major) ring finger."

On motion of the employer, the commission reviewed the finding and disposed of the claim as follows:

"On review award dated October 19, 1929, is hereby reversed and set aside with the finding that the accident did not arise out of and in the course of claimant's employment."

Thereupon she appealed to the circuit court. On a hearing in said court the finding of the commission was affirmed and claimant appealed.

In the circuit court claimant challenged the validity of the Compensation Act on constitutional grounds. The record presents the questions to this court for determination. It will not be necessary to consider these questions, for we have recently ruled them against claimant in DeMay v. Liberty Foundry Co., 327 Mo. 495, 37 S. W. (2d) 641; State ex rel. Syrup Co. v. Compensation Commission, 320 Mo. 893, l. c. 898, 8 S. W. (2d) 897, l. c. 899.

Thus this review is reduced to a consideration of the contention of the employer that the injury did not arise out of and in the course of claimant's employment.

The undisputed facts follow: Claimant worked in the trimming department of the shoe factory. On the day in question she was casing tongues at a table near the embossing machine. The machine in operation stamped the name of the shoe company on "sock linings" used in lining shoes. It was heated by electricity and should be at a certain temperature while in operation. The regular operator of the machine was absent. In this situation an employee was assigned to the machine who was not an experienced operator. After turning on the power she waited for the machine to be heated to the proper temperature for embossing. After waiting for this purpose, she turned and said to claimant: "This machine is not heating."

Thereupon claimant, who was an experienced operator, went to the machine. Usually the temperature was tested by stamping "sock linings" used for that purpose. In the absence of said linings, claimant proceeded in the customary way to test the temperature by placing her hand on the machine. When she did so the machine was in some way tripped, which caused it to operate, thereby injuring claimant's hand.

In construing the phrases "arising out of" and "in the course of employment" as used in the compensation acts, it was said:

"If a workman depart temporarily from his usual avocation to perform some act necessary to be done by someone for his master, he does not cease to be acting in the course of his employment. He is then acting for his master, not for himself. A rule of law which puts such an employee outside his usual course of employment and so deprived him of his right to compensation for an injury suffered, would punish energy and loyalty and helpfulness and promote sloth and inactivity in employees. It would certainly prove detrimental to industry, and such a spirit of disregard of the master's interest, if carried into all of the work, would in time cripple the industry. Besides, the rule would be impractical." [Hartz v. Hartford Faience Co., 90 Conn. 539, 97 Atl. 1021.]

And under facts similar to the facts of this case, it was said:

"The words 'arising out of and in the course of the employment' appear to me to be sufficient to include something which occurs while the workman is in his master's employment and on his master's work, although he is doing something in the interest of his master beyond the scope of what he was employed to do. The act does not say 'when doing the work which he was employed to perform,' and it is a fair inference that if it had been intended to limit the right to compensation to such accidents different language would have been used from that which occurs in the act. It must be assumed, therefore, that the Legislature used language of wider scope to include cases where a workman intervenes to do something useful or helpful to his master, although outside the special duties which he is employed to perform." [M'Quibban v. Menzies, 37 Sc. L. R. 526 (1900), 10 N. C. C. A. 480, 481, 482, 483.]

Other cases construing these phrases under similar facts follow: Goslan v. Gillies, 44 Scott. L. Rep. 71; Harrison v. Whitaker, 16 Times L. Rep. 108; Tobin v. Hearn, 2 L. R. 639, 44 Ir. Law Times, 197; Greer v. Thompson, W. C. Rep. 272, 46 Ir. Law Times, 89, 5 B. W. C. C. 586; Seller v. Boston Rural Vist. Council, 7 B. W. C. C. 99; Ferguson v. Brick & Supplies, 7 Butterworth's Workmen's Comp. Comm., 16 D. L. R. 67, 1054.

The employer contends that the word "employment" as used in the act only covers the work assigned to the employee. We do not

think so. To so rule would defeat the purpose of the legislation. We must put aside the rules applicable to negligence cases and liberally construe the act. [Leilich v. Chevrolet Motor Co., 328 Mo. 112.] Claimant was not attempting to repair the machine. It was not in need of repairs. She went to the assistance of an inexperienced employee and was attempting to determine if the machine was sufficiently heated to perform the work. Under the circumstances she was not only aiding a fellow employee, but was performing a natural service to her employer. The referee ruled correctly in finding that claimant sustained accidental injury arising out of and in the course of her employment.

It follows the judgment should be reversed and the cause remanded. It is so ordered. All concur.