PIRRUNG, Respondent v. AMERICAN NEWS COMPANY et al., Appellants

(67 N. W.2d 748)

(File No. 9456.  Opinion filed December 27, 1954)

**T. R. Johnson,** Sioux Falls, for Defendants-appellants.

**Woods, Fuller, Shultz & Smith,** Sioux Falls, for Claimant-respondent.

SMITH, P. J.   The judgment of the circuit court awarded workmen's compensation to the employee.   The employer and its insurance carrier have appealed.   Under appropriate assignments they raise but two propositions which merit discussion, viz., (1) employee failed to comply with SDC 64.-0601, dealing with notice to the employer of the injury, and (2) the injury did not arise out of and in the course of the employment.   Cf. SDC 64.0102(4).

Whether there was compliance with SDC 64.0601 is the first point raised.   That section reads:

> "Every injured employee or his representative shall immediately upon the occurrence of an injury or as soon thereafter as practicable give or cause to be given to the employer written notice of the injury and the employee shall not be entitled to a physicians' fee nor to any compensation which may have accrued under the terms of this title prior to the giving of such notice, unless it can be shown that the employer, his agent, or representative had knowledge of the injury or death, or that the person

required to give such notice had been prevented from doing so by reason of physical or mental incapacity or the fraud or deceit of some third person or other equally good reason; but no compensation shall be payable unless written notice is given within thirty days after the occurrence of the injury or death unless reasonable excuse is made to the satisfaction of the Commissioner for not giving such notice."

The employer is a distributor of magazines. On December 24, 1952 while preparing bundles of magazines for delivery, the employee became conscious of a burning sensation in her lower back. Shortly she developed sharp pain through her left abdomen and down her leg. She consulted a physician and reported all of these facts and symptoms. She was hospitalized for a few days and a tentative diagnosis of sub-acute pancreatitis was made. From then until February 2, 1953 she was intermittently at home, at work, and back in the hospital, but was without relief from the described pain. On February 2 she was placed under the care of an orthopedic specialist who diagnosed her trouble as lower back strain. He testified he found objective symptoms of such an injury and that it was traumatic in origin. His treatment in the hospital consisted of traction, a cast, and then a supporting jacket. She responded to this treatment. She was released from the hospital February 19, returned to half-time work March 2, and full-time work March 30, and was discharged as cured in September 1953.

On January 2, 1953 the employee told the manager, under whom she worked, of the pain she was suffering. January 4, he was informed she would not return to work on the 5th because of this pain. On January 19 when she returned to work after her first hospitalization she told him she did not know what was wrong with her, but complained of the same pain. On February 12, while the employee was in the hospital, her daughter called the manager on the telephone and advised him her mother had decided she must have hurt her back at work. In testifying about this conversation with the daughter the manager said, "Well, the conversation about the injury ended when I said I would check into it

further, and with the idea of filing a claim if she had hurt it at work." However, he neither made such an investigation nor did he inform the employee of his decision to make no investigation. On March 9, 1953 the employee complained to the manager because he had failed to file a compensation claim. He then had her fill out a report. From the testimony of the manager we infer that the report stated she had strained her back while working on the line on December 24.

The findings of the Commissioner, adopted by the circuit court, include the following:

> VI. "The claimant was examined by Dr. Quinn on January 6, 1953 and hospitalized by him on said date. He diagnosed her ailment as subacute pancreatitis, subsequently confirmed by Dr. Billion. Drs. Billion and Quinn subsequently ruled out the possibility of pancreatitis, and called in Dr. Van Demark on February 2, 1953, who diagnosed the injury as a lower back strain, thereafter concurred in by Drs. Quinn and Billion. The claimant, believing that she was suffering from pancreatitis, had no reason to report the injury to her employer. When she learned of the correct diagnosis on February 2, and within 30 days thereafter, her said employer was notified of the injury by her daughter—Murial Driggs—at which time, the employer, through its manager, J. H. Wagner, advised that he would investigate to determine if a claim should be filed for workmen's compensation."

> VII. "The mistaken diagnosis of Drs. Quinn and Billion constitutes a reasonable excuse for not reporting the injury within the 30 days after December 24, 1952, and the employer had knowledge of the injury within 30 days after February 2, 1953."

The question for decision is whether the undisputed facts and the findings of the Industrial Commissioner support his conclusion that the giving of the notice of injury, provision for which is made by SDC 64.0601, supra, was excused.

■ In analyzing these facts, the initial circumstance which requires consideration is that from December 24, 1952 until February 2, 1953, through no fault of her own, the employee was neither aware of the occurrence of the accident nor of her injury. Because it would be unreasonable to believe the legislature intended to require notice by an employee of that of which, through no fault of her own, she had no knowledge, we align ourselves with those courts which hold the duty of the employee to notify the employer of the occurrence of an accident and injury does not arise until she learns she has sustained a compensable injury. American Rolling Mill Co. v. Stevens, 290 Ky. 16, 160 S.W.2d 355, 145 A.L.R. 1256; Annotation, 145 A.L.R. 1263 at 1286, and Jacques v. Farmers Lumber & Supply Co., 242 Iowa 548, 47 N.W.2d 236.

■ The duty to notify her employer of the accident and her injury arose on February 2, 1953. She was then informed of the diagnosis of her physician and had become convinced she had strained her back while working on the line as above described on December 24, 1952. When this duty arose she was confined in the hospital. While so confined she had her daughter communicate with the manager of her employer. However, the only knowledge the employer gained from the daughter was that the employee claimed to have suffered a back injury while working for her employer. The employee's symptoms of pain had been communicated to the manager prior to February 2, 1953. Under the holding of Wilhelm v. Narregang-Hart Co., 66 S.D. 155, 279 N.W. 549, the knowledge thus gained by the employer was not sufficient to excuse the employee from giving the formal notice described in SDC 64.0601 and 64.0602; the knowledge thus communicated was insufficient to fairly afford the employer opportunity to investigate both the cause and nature of the injury.

However, it is an undisputed fact, and the Commissioner found that when the insufficient information was communicated to him the manager said he would undertake an investigation with the idea of filing a claim for workmen's compensation. It is also undisputed in the record that thereafter he changed his mind, made no investigation, and

failed to advise the employee of that fact. When she complained of his inaction, he caused her to make out a belated report. It is clear under the record that no prejudice was suffered by the employer because of the described delay.

It is these additional undisputed facts which induce our conclusion that for the Commissioner to have denied an award predicated upon the failure of the employee to give timely notice of the occurrence of her injury, would have been to abuse the discretion with which he is clothed by SDC 64.0601 to excuse the giving of such a notice.

■ The requirement of timely notice of injury was intended by the Legislature as a shield to the employer against unjust claims. To promote justice and the humanitarian purposes which motivated the Workmen's Compensation Act, SDC 64.0101 et seq., and to prevent that which was intended as a shield from becoming a weapon, the Commissioner was clothed with power to relax the rule or even excuse the giving of such notice under circumstances which rendered such a course reasonable. To attempt to catalogue the circumstances which will justify the exercise of that power would be unwise, if not impossible. We are content to deal with the facts at hand. We are firmly convinced that to permit an employer who had lulled an injured employee into inactivity to escape liability on the ground that the notice of injury was untimely would not only be unreasonable but would be contrary to the whole spirit of the Workmen's Compensation Act.

■ The contention that the injury did not arise out of and in the course of the employment is founded on these facts. The principal duties of the employee, at the time in question, was to post periodical returns, and figure invoices. While so engaged she sat at a desk and did little physical work. She had formerly worked on the line preparing bundles of magazines for delivery. On occasions, when she had completed her regular duties, she would help on the line. December 24 all of the employees were hurrying to finish the day's work. After claimant had completed her posting and checking she went back and worked on the line. She worked there that day from 9 o'clock a. m. until the work was

completed in the afternoon. In testifying about claimant's work on the line, the manager said, "That used to be part of her job, but for the past two years her work on that assembly table was very infrequent, approximately not over three times a year altogether—that is just a rough guess." He was asked if that was volunteer work and answered, "Well, not always, but on this December 24th that was volunteer work. In fact, I didn't even know about it at the time." He admitted he saw her back there afterwards during the day.

The Commissioner found:

> "The undisputed record discloses that the claimant's duties at the time of her claimed injury, consisted solely of working in the office posting and filing invoices. That on said date the claimant evidently had completed her own duties and decided to help out her co-workers on the line and in another department and room in order that their days' work be completed sooner and thus enable everyone to to leave work earlier than usual. That the work the claimant was doing at the time she claims to have sustained the injury in question was not one of her regular duties and in no wise connected with or incidental to the performance of her duties. That at most she was a volunteer even though she may have been furthering the interests of her employer at the time. In assuming the duties of bundling magazines she was acting without the scope of her employment. That there was no emergency that called for the claimant's assistance to work 'on the line' as heretofore set forth. That there was no causal connection between the conditions surrounding the performance of her work and the resulting injury. That the accident did not result from a risk reasonably incident to her employment."

The conclusion of the Commissioner was that the injury did not arise out of and in the course of her employment. Although he did find that she suffered an injury as claimed, he denied her an award of compensation.

The circuit court was of the view that under the undis-

puted facts the injury arose out of and in the course of the employment and entered judgment awarding compensation, the amount of which is not questioned. Whether the circuit court was in error in its view of the law, is the question for decision.

Under the workmen's compensation statutes "injury" or "personal injury" is defined as "only injury by accident arising out of and in the course of the employment." SDC 64.0102(4).

In Wilson v. Dakota Light & Power Co., 45 S.D. 175, 186 N.W. 828, the chief engineer at the employer's power plant was denied compensation for an injury received while he was attempting to assist a bricklayer and plasterer in demolishing an old wall for the reason that he was not injured in the course of his employment. Our holding in that case is urged by the appellant as controlling in the circumstances revealed by this record. In our opinion, to so hold would place an unrealistic limitation upon the scope of claimant's employment.

Such a rigid ruling was advocated in Hartz v. Hartford Faience Co., 90 Conn. 539, 97 A. 1020, 1021. In response that court expressed a view which has received quite general acceptance. It said:

> "A rule of law, which put such an employe outside his usual course of employment and so deprived him of his right to compensation for an injury suffered, would punish energy and loyalty and helpfulness and promote sloth and inactivity in employes. It would certainly prove detrimental to industry, and such a spirit of disregard of the master's interest, if carried into all of the work, would in time cripple the industry. Besides, the rule would be impractical. One trade must occasionally overlap another, * * *."

It is undisputed that the employee advanced to her present position as a posting and invoice clerk from a position at the bundle table, and on occasions, since such advancement, she has been directed by the manager to help out on the line. While it is also undisputed that she was not directed

to assist on the day in question, the manager admits that he noticed what she was doing at least once during that day.

In our opinion the relationship between the employee's regular duties and the work on the line is close enough so that, in lending a hand at a time when she was idle and those in the line were rushing to complete the work of the day, she would be acting in response to a sense of obligation generated by her total experience as an employee; she would be doing that which any reasonable employer would naturally expect from a responsible and loyal worker. The fact that she was also motivated on this particular day by the common desire of the whole force to gain a few extra hours of Christmas vacation is without significance; she was doing the work and serving the interests of her employer. To hold that any or all of these circumstances carried her beyond the scope of her employment, would be unreasonable. Ransdell v. International Shoe Co., 329 Mo. 47, 44 S.W.2d 1, 82 A.L.R. 1249; Anderson v. Industrial Commission, 250 Wis. 330, 27 N.W.2d 499.

The judgment of the circuit court is affirmed.
All the Judges concur.