2000 SD 31

**Annie VAUGHN, Claimant
and Appellee,**

v.

**JOHN MORRELL & CO.
Employer/Self–Insurer
and Appellant.**

No. 21012.

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 2000.

Decided March 1, 2000.

Brett A. Lovrien of Parliman and Parliman, Sioux Falls, for claimant and appellee.

Michael S. McKnight and Lisa Hansen Marso of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for employer/self-insurer and appellant.

SABERS, Justice.

[¶ 1.] The Department of Labor (DOL) determined that Annie Vaughn (Vaughn) was not entitled to workers' compensation benefits from John Morrell & Company (Morrell). Vaughn appealed. The circuit court reversed and we granted an intermediate appeal to Morrell. We reverse and remand.

### FACTS

[¶ 2.] Vaughn was born August 3, 1935. She completed the 11th grade, but her reading and math skills are equivalent to those of a fourth or fifth grader. She became employed with the Morrell packing plant in 1973 and transferred to the Sioux Falls plant in 1981. Her job duties at Morrell required her to be on her feet continuously throughout the day.

[¶ 3.] On February 1, 1993, Vaughn saw Dr. McGowan because her feet were hurting. She told Dr. McGowan that she believed her standing on concrete all day at work caused her foot pain. Dr. McGowan diagnosed Vaughn with heel spurs and plantar fasciitis and advised her to use a heel insert in her shoes and take over-the-counter medication for the pain. Vaughn testified that while she was at work, she stood on cardboard boxes to relieve some of the pressure from her feet.* She claims she requested a floor mat from several supervisors, but never received one.

[¶ 4.] While her foot pain initially subsided, Vaughn was transferred to a job in the labeling department that required more walking and standing on concrete floors. Gradually, her foot pain intensified and on October 3, 1994, Vaughn saw Dr. Richard Plummer. After the appointment, Dr. Plummer wrote a note stating Vaughn "should be off work [for] 48 h[ours] because of plantar fasciitis and heel spur." Vaughn testified that she gave this note to Connie Wheeler, a registered nurse operating Morrell's first aid station, and requested sick leave.

[¶ 5.] As of October 3, 1994, Nurse Wheeler was responsible for filling out accident investigation forms and handling worker's compensation claims for Morrell. She testified that she was familiar with plantar fasciitis because she treated it on two occasions prior to Vaughn's injury while she was a nurse with Morrell. She further testified that the nurse determines whether the employee gets an occupational or work-related injury form to fill out. See also Schuck v. John Morrell & Co., 529 N.W.2d 894, 898 (S.D.1995) (stating a comptroller for Morrell indicated "that it was Morrell and not the employee who made the decision of whether to report an injury as a worker's compensation claim.").

[¶ 6.] Jean Koehler, Morrell's in-house attorney during this time, testified that Vaughn called Nurse Wheeler once her sick leave was exhausted, approximately November 23, 1994. Koehler testified that Vaughn told Nurse Wheeler that she believed her foot problems were related to work. Nurse Wheeler, however, testified that she does not remember having this conversation with either Vaughn or Koehler.

[¶ 7.] On December 22, 1994, Vaughn's first attorney sent a letter to Morrell indicating that he was representing Vaughn in her worker's compensation suit against Morrell. The date of injury was listed as

---

* In addition to her foot problems, Vaughn experienced other medical problems while employed at Morrell, namely, a heart attack, stroke, ruptured appendix, diabetes, hypothyroidism, high blood pressure and stress.

October 3, 1994. Morrell reviewed its file and responded that no notice was provided to them within the statutory time limitation.

[¶ 8.] On July 19, 1995, Vaughn completed and signed a South Dakota Employer's First Report of Injury form. The form reflects that she has suffered from plantar fasciitis and heel spurs on both feet since October 3, 1994. It also provides that "the illness is due to constant standing on cement floors and walking more on [the] job of labeling boxes."

[¶ 9.] Morrell refused to pay Vaughn's medical bills. DOL determined that Morrell did not know that Vaughn's foot problems were work-related until July of 1995. Therefore, DOL concluded that "SDCL 62–7–10 acts to bar [Vaughn's] claim for benefits, and her petition must be denied."

[¶ 10.] Vaughn appealed. The circuit court determined that Morrell did have notice of the possibility of a work-related injury and reversed DOL's determination. We granted Morrell an intermediate appeal.

## STANDARD OF REVIEW

[¶ 11.] We review administrative decisions the same as the circuit court. *Schuck*, 529 N.W.2d at 896. We will not disturb DOL's factual findings unless they are clearly erroneous. *Welch v. Automotive Co.*, 528 N.W.2d 406, 409 (S.D.1995) (citation omitted). Conclusions of law are reviewed de novo. *Id.* (citation omitted).

## [¶ 12.] WHETHER DOL WAS CLEARLY ERRONEOUS IN DETERMINING THAT VAUGHN DID NOT PROVIDE TIMELY NOTICE OF THE WORK–RELATED NATURE OF HER INJURY.

[¶ 13.] "The law in effect when the injury occurred governs the rights of the parties." *Loewen v. Hyman Freight-*

*ways, Inc.*, 1997 SD 2, ¶ 9, 557 N.W.2d 764, 766 (citations omitted). "The time period for notice or claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness and probable compensable character of [the] injury or disease." *Miller v. Lake Area Hospital*, 1996 SD 89, ¶ 14, 551 N.W.2d 817, 820 (citation omitted). Whether the claimant's conduct is reasonable is determined "in the light of [her] own education and intelligence, not in the light of the standard of some hypothetical reasonable person of the kind familiar to tort law." *Loewen*, 1997 SD 2, ¶ 15, 557 N.W.2d at 768 (citation omitted).

[¶ 14.] Vaughn testified that she told her doctor in February of 1993 that she thought her standing on concrete floors at work caused her foot problems. However, she treated the plantar fasciitis with heel pads and over-the-counter medications for over 20 months. Considering that her verbal and math skills are limited and that this disability is "gradual and progressive in nature," it is reasonable to conclude that Vaughn did not recognize the nature and seriousness of this injury until October 3, 1994. *See Tieszen v. John Morrell & Co.*, 528 N.W.2d 401, 404 (S.D. 1995) (stating that when an injury is "gradual and progressive in nature, the date of the injury is the date when pain prevents the employee from continuing to work."). Therefore, the date of injury in this case is October 3, 1994.

[¶ 15.] SDCL 62–7–10 requires that an employee provide written notice to her employer if she sustains a work-related injury:

An employee who claims compensation for an injury shall immediately, or as soon thereafter as practical, notify the employer of the occurrence of the injury. Written notice of the injury shall be provided to the employer no later than three business days after its occurrence.

The notice need not be in any particular form but must advise the employer of when, where, and how the injury occurred. Failure to give notice as required by this section prohibits a claim for compensation under this title unless the employee or the employee's representative can show:

(1) The employer or the employer's representative had actual knowledge of the injury; or

(2) The employer was given written notice after the date of the injury and the employee had good cause for failing to give written notice within the three business-day period, which determination shall be liberally construed in favor of the employee.

[¶ 16.] The purpose of the notice requirement is to provide the employer an opportunity to investigate the cause and nature of an employee's injury while the facts are readily accessible. *Schuck*, 529 N.W.2d at 897 (citation omitted). Therefore, "[n]otice to the employer of an injury is a condition precedent to compensation." *Loewen*, 1997 SD 2, ¶ 8, 557 N.W.2d at 766 (citations omitted). However, the failure to provide written notification to the employer may be excused if the employer had actual knowledge of the injury. SDCL 62–7–10. Additionally, if written notification is delayed, strict compliance with the statute is excused if the employee has good cause justifying the delay.

[¶ 17.] *A. Was written notification provided to Morrell within the statutory time limitation?*

[¶ 18.] Morrell claims it received insufficient notice that the injury was work-related. Morrell insists that it did not receive written notice that Vaughn's foot problems were work-related until July of 1995, nine months after the date of injury. Due to this insufficient notice, Morrell claims it was prejudiced because (1) it was unable to determine whether the injury was work-related while the facts were accessible and (2) it was denied the opportunity to minimize the seriousness of any work-related injury.

[¶ 19.] On the other hand, Vaughn argues that she complied with the notice provision when she gave Nurse Wheeler the note from Dr. Plummer providing that Vaughn "should be off work [for] 48 h[ours] because of plantar fasciitis and heel spur." She argues that an employee need only provide notice of the *possibility* that the injury is work-related and relies heavily on the following South Dakota cases.

[¶ 20.] In *Loewen*, 1997 SD 2, ¶ 18, 557 N.W.2d at 768, we stated:

We note the facts of this case illustrate the purpose of the notice requirement and that is 'to give the employer opportunity to investigate the injury while the facts are accessible. The notice requirement protects the employer by assuring he is alerted to the *possibility* of a claim so that a prompt investigation can be performed.'

(quoting *Westergren v. Baptist Hospital of Winner*, 1996 SD 69, ¶ 18, 549 N.W.2d 390, 395) (citation omitted) (emphasis added). *Loewen* and *Westergren* both apply this quote in the context of defining the purpose of the notice requirement, rather than what the notification must contain.

[¶ 21.] In *Schuck*, 529 N.W.2d at 898, we determined that the employer possessed actual knowledge of the employee's injury: "[i]t is clear that Morrell had knowledge of the possibility of a future claim by Schuck and could have investigated Schuck's complaints to mitigate a future disability claim had it chosen to do so." In support of this conclusion, we found an Iowa case to be persuasive:

While the discovery rule aids the employee by preventing the limitation peri-

od from commencing until the claimant knows of his injury and its probable compensable nature, ... the notice requirement ... protects the employer by insuring he is alerted to the *possibility* of a claim so that an investigation can be made while the information is fresh....

*Id.* (quoting *Dillinger v. City of Sioux City,* 368 N.W.2d 176, 180 (Iowa 1985) (emphasis added)).

[¶ 22.] In *Streyle v. Steiner Corp.,* 345 N.W.2d 865, 866 (S.D.1984), the employee conceded that she failed to provide written notification of her injury to her employer. Yet, we found that the notice requirement was excused because the employer possessed "sufficient knowledge to indicate the *possibility* of a compensable injury." *Id.* at 867.

[¶ 23.] The excerpts from these cases relate to either the purpose of the notice requirement or to the standard used in determining whether the employer had actual knowledge that the employee sustained a work-related injury. However, this is not the standard for determining whether the written notification was adequate. SDCL 62–7–10 requires the written notification to include allegations of "when, where, and how the injury occurred." Thus, it is clear that the notification must include an indication that the injury is work-related:

> Not only must [Employee] prove [Employer] had notice of an injury, but also must prove that [Employer] was on notice of the work-related nature of the injury.

*Miller,* 1996 SD 89, ¶ 11, 551 N.W.2d at 819 (citations omitted). To provide otherwise would be to burden employers with the responsibility of investigating every single injury their employees sustain, whether work-related or not.

[¶ 24.] Dr. Plummer's note in this case did not provide notice that Vaughn's foot problems were caused by her working. The note merely stated that she suffered from plantar fasciitis as well as heel spurs and needed two days off work. Clearly, this note did not "advise the employer of when, where, and how the injury occurred." SDCL 62–7–10. Therefore, Vaughn must prove either that Morrell had actual notice of her claim or that she had good cause for failing to provide the requisite notice.

[¶ 25.] *B. Did Morrell have actual knowledge that Vaughn had a possible compensable claim against it?*

[¶ 26.] Morrell argues that it did not have actual knowledge that Vaughn's injury was work-related until July of 1995. DOL agreed.

[¶ 27.] Vaughn argues that Morrell did possess actual knowledge of the possibility of a claim on October 3, 1994. She relies on the cumulative evidence of: (1) the doctor's note dated October 3, 1994; (2) the testimony of Nurse Wheeler that she knew plantar fasciitis had been treated (in other cases) as a worker's compensation claim; and (3) the supervisor's testimony that even though he could not specifically recall Vaughn's request for a floor mat, it was very possible that she did request one.

[¶ 28.] The standard used for determining whether an employer has actual knowledge is: whether the employer is "alerted to the *possibility* of a claim so that a prompt investigation can be performed." *Loewen,* 1997 SD 2, ¶ 18, 557 N.W.2d at 768 (citations omitted) (emphasis added).

[¶ 29.] In *Westergren,* the claimant was told by her doctor in February 1990 that her condition was "probably work-related." 1996 SD 69, ¶ 20, 549 N.W.2d at 396. Yet, she did not file an injury report until June 1, 1990. *Id.* However, the employer, who

thought the carpal tunnel symptoms were related to a known work-related back injury, immediately began investigating "to determine the nature and extent of [c]laimant's injuries and whether there were any work restrictions due to the back injury [e]mployer had already accepted as compensable." *Id.* Therefore, we determined that the employer possessed sufficient actual knowledge that claimant's carpal tunnel syndrome may have been work-related. *Id.* ¶ 21.

[¶ 30.] In *Schuck,* Schuck had reported back and hand problems to Morrell on several occasions during his employment. 529 N.W.2d at 898. Yet, he did not file for worker's compensation benefits until one and one-half years after he discontinued his employment with Morrell. We determined that Morrell had actual knowledge "of the possibility of a future claim by Schuck...." *Id.* The distinguishing factor in *Schuck,* however, is the fact that "Morrell paid for most, if not all, of Schuck's medical expenses related to his back and hand problems," but it chose not to report the expenses as worker's compensation claims. *Id.*

[¶ 31.] In *Streyle,* 345 N.W.2d at 867, we found that the employer had actual knowledge of the work-related injury. The claimant reached into a deep laundry basket and felt a sharp pain run through her back. *Id.* at 866. She immediately told the plant manager that "something must have happened to my back. My back is hurting." *Id.* After two more days on the job, claimant told her supervisor that she could no longer handle her job because her back was bothering her. *Id.* She did not report to work after that. Her doctor subsequently advised the employer that claimant be given a job that was "more sitting in nature." *Id.* In determining that the employer had "sufficient knowledge to indicate the possibility of a compensable injury," we stated:

> [The cumulative evidence] put [Employer] on notice that something out of the

ordinary had occurred and gave them an opportunity for questioning and investigation. While any one of the circumstances alone might not be enough to find that the employer had notice of injury, their combined occurrence within a very short period of time gave [Employer] knowledge of the injury.

*Id.* at 867 (internal citations omitted).

[¶ 32.] Vaughn's case is substantially different from the above cases. Vaughn did not indicate to Morrell that her plantar fasciitis was possibly work-related until November 23, 1994—well outside the three business days as required by SDCL 62–7–10. Morrell did not assume responsibility for any of Vaughn's medical bills. Nor did Morrell begin investigating the cause of Vaughn's plantar fasciitis within the three-day notice period. To impose actual knowledge on Morrell would be to determine that all employers must investigate all injuries and illnesses that are brought to their attention by any employee, whether work-related or not.

[¶ 33.] It is true that "[w]orker's compensation statutes are liberally construed in favor of injured employees." *Welch,* 528 N.W.2d at 409 (citation omitted). However, the minimum prerequisite is that there must be some indication that the injury is work-related:

> It is not enough, however, that the employer, through his representatives, be aware that claimant 'feels sick,' or has a headache, or fell down, or walks with a limp, or.... There must ... be some knowledge of accompanying facts connecting the injury or illness with the employment, and indicating to a reasonably conscientious manager that the case might involve a potential compensation claim.

Larson's Workers' Compensation Laws § 78.31(a)(2). Vaughn did not give any indication to Morrell that her plantar fasci-

itis may possibly give rise to a compensable injury.

[¶ 34.] *C. Did Vaughn have good cause to justify the delay of written notification?*

[¶ 35.] Vaughn argues that she has good cause to be excused from the notice requirement. She first argues that given her limited education, she did not understand that she had to comply with reporting requirements to be eligible for workers' compensation benefits. Secondly, she asserts that Nurse Wheeler, who received the note on October 3, 1994, had superior knowledge about plantar fasciitis and should have known it was work-related. Finally, she argues that Morrell should be estopped from raising the issue of notice because Morrell could have investigated her injury on November 23, 1994 rather than wait until July 1, 1995.

[¶ 36.] Vaughn's argument that she is excused because she is of limited education fails in light of the fact that she testified that she had filed a workers' compensation claim prior to October 3, 1994 for a separate injury. Vaughn also testified that she told her doctor, in February of 1993, that she believed the plantar fasciitis to be work-related. Now she argues that Nurse Wheeler had superior knowledge and should have known it was an injury that was work-related. Vaughn cannot now "assert a better version of the facts than [her] prior testimony and 'cannot now claim a material issue of fact which assumes a conclusion contrary to [her] own testimony.'" *Loewen*, 1997 SD 2, ¶ 16, 557 N.W.2d at 768 (quotations omitted).

[¶ 37.] Furthermore, estoppel, as a "good cause" excuse, is not justified in this case. Estoppel is typically reserved for cases where the employer makes "assurances, misrepresentations, negligen[t], or even deliberate deceptions." Larson's Workers' Compensation Laws § 78.45. The most common type of an estoppel case generally involves a claimant who:

contends that [s]he was lulled into a sense of security by statements of employer or carrier representatives that '[s]he will be taken care of' or that h[er] claim has been filed for h[er] or that a claim will not be necessary because [s]he would be paid compensation benefits in any event.

*Id.* Because this case does not involve any of the above allegations, the imposition of estoppel against Morrell is not justified.

[¶ 38.] Vaughn has the burden of proving all facts essential to compensation. She has not met her burden of proving timely notice, actual knowledge or good cause for not giving timely notice.

[¶ 39.] We reverse and remand to the circuit court to reinstate the decision of DOL.

[¶ 40.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.