2000 SD 105

**Mary VU, Claimant and Appellant,**

v.

**JOHN MORRELL & CO., Employer, Self–Insurer and Appellee.**

**No. 21315.**

Supreme Court of South Dakota.

Argued June 1, 2000.

Decided Aug. 9, 2000.

does not recognize a need for restitution.

Michael Abourezk and Alicia Garcia of Abourezk Law Office, Rapid City, Attorneys for claimant and appellant.

Michael S. McKnight and Lisa Hansen Marso of Boyce, Murphy, McDowell and Greenfield, Sioux Falls, Attorneys for employer, self–insurer and appellee.

SABERS, Justice.

[¶ 1.] The Department of Labor (DOL) determined that Mary Vu was not entitled to receive worker's compensation benefits from John Morrell & Company (Morrell) because she failed to provide timely notice. Mary appealed. The circuit court affirmed. We reverse and remand.

## FACTS

[¶ 2.] Mary Vu is thirty-four-years-old. She started work at Morrell on May 5, 1987 as a janitor. She developed problems with her wrist and was moved to a position in pork cut.[1] After two to three weeks, she became a ham saw operator, where she remained for one and one-half years.

[¶ 3.] As a ham saw operator, Mary was responsible for positioning large pork cuts, mostly hind quarters, on an assembly line. She would align the legs so the saw cuts would be accurate. The tail would commonly get stuck in the rollers and Mary, a 5'5" woman weighing 130 pounds, would have to reach over the conveyor and pull or jerk the cut back on the table. If a pork cut fell, she would carry it to the wash sink or to the side of the table. After washing the pork cut, she would return it to the table. The average weight of the cut was thirty to thirty-two pounds, but some were forty pounds. Mary's work day ranged between eight to ten hours.

[¶ 4.] On Friday, January 6, 1989, Mary was working the line when one of the larger cuts got stuck in the corner of her table. She reached over and felt a "terrible pain" in her back; it was pain she had

---

1. Mary testified that she may have signed a worker's compensation benefits form, prepared by the nurses, for an injury she received before the back injury at issue here. It is unclear whether it was for this wrist injury.

never experienced before. She shut off her line, but restarted it because her co-worker operating the line behind her did not see her shut down. Two supervisors and a foreman arrived and excused her from the line so she could see the nurse.

[¶ 5.] At the nurse's station, Mary saw "an older nurse," Ila Henderson.[2] Mary testified that she told Nurse Henderson that she was experiencing a bad back pain and Nurse Henderson asked her if she wanted to lie down. Mary laid down for approximately forty-five minutes. Mary also testified that Nurse Henderson told her to make an appointment with "the John Morrell doctor," Dr. Gail Benson, an orthopedic surgeon with Midwest Orthopedics and associated with Central Plains Clinic. Despite Mary's reluctance, Nurse Henderson successfully encouraged her to finish the day on the line.

[¶ 6.] This visit to the nurse's station was not documented; however, Nurse Sharon Schumacher testified that the nurses did not "always" record an employee's visit if they only needed to lie down, wanted an aspirin or a Band–Aid. Nurse Connie Wheeler also testified to this effect – that they would not document an employee coming down to the nurse's station to lie down unless the employee went home.

[¶ 7.] Mary called Dr. Benson's office from home and the earliest available appointment was Tuesday, January 10. Before work, on Monday, January 9, Mary called the nurse's station and spoke with Nurse Schumacher. Mary testified that she told the nurse that she bent over at home and was unable to straighten up due to the injury she sustained at work. The first aid card reflects that Mary "states [she] has appointment [with] Dr. Benson tom[orrow] as yest[erday] [at] home [she] bent over [and] couldn't straighten up."

This entry consists of one and one-half lines and is immediately followed by one and one-half lines of partially erased words. Nurse Schumacher testified that this entry was in her handwriting but she could not recall whether Mary told her that her injury was work-related.

[¶ 8.] Exhibit 3 is the original first aid card, which was maintained by Morrell employees until offered and received in this case. It is clear that there are one and one-half partially erased lines immediately following the above statement. No entry has been made and no writing appears over the one and one-half partially erased lines. The erasures were not complete and words may still be discerned. Curiously, there are fourteen entries on Mary's first aid card and these three lines constitute the only entry written in pencil.

[¶ 9.] There is no testimony by Nurse Schumacher or anyone else about the partial erasure, the reason therefore, or the words remaining after the partial erasure. In their appellate briefs, both parties commented on the erasure, but neither party commented on the partially erased words. If these partially erased words were being relied upon, we would need to remand to the DOL to determine their effect, if any. However, because we are determining the issue of whether timely notice was provided, we review the remaining record de novo.

[¶ 10.] On January 10, Mary saw Dr. Benson for the first time. Dr. Benson diagnosed Mary with "degenerative disk symptomatology." His notes indicate:

23 year old female who has been having low back pain with pain radiating into the buttocks and down into the legs, primarily left leg over the past 2 months.[3] She works at Morrell's and

---

2. Mary testified that she saw the "older nurse" and thought it was Connie Wheeler. However, Wheeler testified that she did not see Mary and the "older nurse" would have been Henderson.

3. Mary argues that she told Dr. Benson that she experienced pain in her *heels* for the prior two months due to her standing on the concrete floors at work. She asserts that Dr. Benson erred in indicating that she experienced back pain during the prior two months. Dr. Benson has not been deposed yet.

pushes and pulls hogs. She denies a history of injury. She does smoke. No family history of back problems and she does not do a great amount of driving. Her orthopedic exam today shows she has some loss of lumbar lordosis and mild loss of lumbar range of motion. Negative straight leg raising test. No neurologic deficits. X-rays of her lumbar spine are normal. It is my impression she is beginning to have some degenerative disk syptomatology.

(footnote added). Dr. Benson advised Mary to stop smoking and to implement a home exercise program and a home traction program. He also advised that she attend a program at McKennan Hospital to learn the proper techniques for home exercises. He prescribed some "mild analgesics" and stated that she could return to work. The accompanying radiology report indicates that Mary's spine alignment "is good" with "no fracture, destructive lesion or other abnormality." Mary's visit to Dr. Benson was paid for by Mary's insurance company.

[¶ 11.] Mary testified that she did not understand the diagnosis of degenerative disk disease; specifically, she did not understand the source of the pain or how to alleviate it. In accordance with Dr. Benson's advice, she thought that moving around would help to "work out" the pain and she resumed working even though she was experiencing chronic, "excruciating" pain. Mary quit her job at Morrell in April of 1989 because of her pain and the harassment she received from supervisors when she claimed she was in too much pain to work. Despite the "constant" pain, she continued to try to work at different jobs until the end of 1992.[4]

[¶ 12.] Between April of 1989 and October 1991, Mary relied on Dr. Benson's diagnosis and attempted to maintain a home exercise program; however, she testified that the exercises seemed to cause her more pain. After her visit with Dr. Benson, she did not see any physicians during 1989 because she did not know she had a permanent injury and thought that the pain would improve with exercise. Later, she moved to Rapid City to live with her parents to receive help caring for her four children and herself. She saw physicians at Indian Health Services and went to Sioux San Hospital approximately six times complaining of back pain. Each time, she was given a variety of medications and sent home.

[¶ 13.] On October 2, 1991, Mary was referred to Dr. Sabow, an orthopedic neurologist, who informed her of the permanent nature of her injury. Dr. Sabow noted in his report that Mary injured her back while working on the line at Morrell in 1989. Dr. Sabow concluded:

> The patient obviously has a chronic low back syndrome and exertion simply aggravates the situation. Because of her age and the fact that she literally is having her life change because of it, a CT scan should be obtained – not because I would recommend a laminectomy but because, if she has a large bulging fragment, nonherniated, she may be a candidate for percutaneous nucliectomy.

The CT scan, conducted on November 6, 1991, revealed that Mary suffered from two bulging disks and did not have degenerative disk disease.

[¶ 14.] Mary filed a "Notice of Claim For Compensation" which was received on October 31, 1991 by the DOL.[5] Morrell de-

---

4. On April 27, 1989, Mary applied for unemployment insurance benefits. She was denied benefits after the DOL found that she voluntarily quit without good cause.

   On June 20, 1995, Mary was informed that she was entitled to receive monthly disability benefits from Social Security in the amount of $641.00 effective July of 1993.

The amount due from July 1993 through May 1995 was subject to reduction due to her receipt of Supplemental Security Income.

5. Although the Notice of Claim is dated September 6, 1991, it refers to the results of the CT scan administered in October of 1991.

nied Mary's worker's compensation claim on the basis that it did not receive proper notice.

[¶ 15.] On November 19, 1998, the DOL denied benefits to Mary.[6] It found that Mary did not provide written notice within thirty days of January 6, 1989. It further found that Mary failed to show that Morrell had actual or constructive knowledge of her injury and that Mary was not excused from providing timely notice.

[¶ 16.] The circuit court affirmed the DOL's decision. However, it found that the DOL was erroneous in concluding that Mary "cannot claim on one hand that she reported the injury immediately after it occurred and claim on the other [hand] that she did not comprehend the nature of the injury and thus was not required to report it." We agree with the circuit court to this extent. However, the circuit court claimed that this does not affect the result, which was that Mary failed to give timely notice.

[¶ 17.] Mary appeals raising one issue.

## STANDARD OF REVIEW

[¶ 18.] Administrative decisions are reviewed at this level the same as they are reviewed at the circuit court level. *Vaughn v. John Morrell & Co.*, 2000 SD 31, ¶ 11, 606 N.W.2d 919, 922 (citation omitted). The factual findings are subject to a clearly erroneous standard while conclusions of law are reviewed de novo. *Id.* (citations omitted).

[¶ 19.] **WHETHER DOL ERRED IN DETERMINING THAT MARY DID NOT PROVIDE TIMELY NOTICE OF THE WORK-RELATED NATURE OF HER INJURY.**

[¶ 20.] It is well established that "[t]he law in effect when the injury occurred governs the rights of the parties."

*Id.* ¶ 13 (citing *Loewen v. Hyman Freightways, Inc.*, 1997 SD 2, ¶ 9, 557 N.W.2d 764, 766 (citations omitted)). "The time period for notice of claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness and probable compensable character of [the] injury or disease." *Id.* (quoting *Miller v. Lake Area Hospital*, 1996 SD 89, ¶ 14, 551 N.W.2d 817, 820 (citation omitted)). The reasonableness of the claimant's conduct is determined "in the light of [her] own education and intelligence, not in the light of the standard of some hypothetical reasonable person of the kind familiar to tort law." *Id.* (quoting *Loewen*, 1997 SD 2, ¶ 15, 557 N.W.2d at 768 (citation omitted)).

[¶ 21.] Mary sustained an injury to her back on January 6, 1989. She testified that she notified her supervisors and reported to the nurse's station. The nurse on duty had her lie down for forty-five minutes and, as Mary testified, asked if she wanted to see "John Morrell's doctor," Dr. Benson. This visit to the nurse's station was not recorded on Mary's first aid card. At the time of their testimony, none of the supervisors recalled Mary injuring her back on the line.

[¶ 22.] Dr. Benson diagnosed Mary with degenerative disk disease and it was not until October 2, 1991 that she was advised that she did not have a disease, but instead suffered from two bulging disks related to the January 6, 1989 injury. As indicated, "[t]he time period for notice or claim does not begin to run until the claimant, as a reasonable person, *should* recognize the nature, seriousness and probable compensable character of [the] injury or disease." *Id.* (emphasis added).

[¶ 23.] This court was presented with a similar situation in *Pirrung v. American*

---

6. Some delay in seeking worker's compensation benefits may also be explained by the fact that Mary was experiencing "extreme psychological difficulties." Mary was examined by a neuropsychologist on March 7, 1994. The report indicates that Mary suffered from delusional behavior and it was recommended that she undergo psychiatric evaluation and management.

*News Company,* 75 S.D. 444, 67 N.W.2d 748 (1954). In *Pirrung,* the claimant experienced a burning sensation in her lower back while lifting bundles of magazines. Shortly thereafter, the pain spread through her left abdominal area and down one leg. Her physicians misdiagnosed the problem as sub-acute pancreatitis. However, forty days after the injury occurred, it was discovered that the pain was due to lower back strain resulting from her lifting the magazine bundles. In affirming the circuit court's award of benefits, this court found that the duty to notify her employer did not arise until the date when the compensable injury was known to her, and stated that it agreed "with those courts which hold the duty of the employee to notify the employer of the occurrence of an accident and injury does not arise until she learns she has sustained a compensable injury." *Id.* at 750 (citations omitted).

[¶ 24.] Additionally, in *Bearshield v. City of Gregory,* 278 N.W.2d 164 (S.D.1979), this court determined that a misdiagnosis tolled the date of injury. In *Bearshield,* a police officer's eye was injured on December 13, 1972 when a brick was thrown through the window of the police station. Six months after the incident, he was experiencing frequent headaches and blurred vision. However, on November 20, 1974, he learned that he was blind in one eye. He failed to inform the worker's compensation insurance carrier of the blindness within the two-year statute of limitation. In affirming the circuit court's determination that Bearshield provided timely notice, this court stated:

> [T]he fact that [claimant] suffered from pain and other symptoms is not the determinative factor and will not support a determination that respondent had knowledge of the existence or extent of his injury. A claimant cannot be expected to be a diagnostician and, while he or she may be aware of a problem, until he or she is aware that the problem is a compensable injury, the statute of limitations does not begin to run.

*Id.* at 166. *See also M.M. Sundt Const. Co. v. Industrial Comm'n of Ariz.,* 124 Ariz. 94, 602 P.2d 475, 476 (1979) (awarding worker's compensation benefits to a construction worker after he was advised that the ringing in his ears, which he experienced for fifteen years, was immutable and work-related).

[¶ 25.] Morrell argues that *Loewen v. Hyman Freightways, Inc.,* 1997 SD 2, 557 N.W.2d 764 is more applicable to this case than *Pirrung* or *Bearshield.* In late May or early June of 1993, Loewen tripped and fell at work while he was helping a fellow worker shut a trailer door. He did not seek medical attention, but self-treated with rest and a heating pad. He missed one day of work and left early several other days due to the pain in his back. On August 5, 1993, after Loewen sustained a second fall while on vacation, he went to a physician with lower back pain and learned that he may have to have surgery. On that same date, he notified his employer that the cause of his back problems was the fall he sustained in May or June of 1993. His employer could not recall Loewen reporting a work-related injury, nor do the employer's records reflect such an injury.

[¶ 26.] *Loewen* provided that the suffering of economic harm by an employee is *not* "the precipitating event that commences the notice period . . . in a worker's compensation case under South Dakota law," *Id.* ¶ 14, and affirmed DOL's determination that Loewen's testimony was not credible and that he did not provide timely notice.

[¶ 27.] Here, the facts differ substantially from those in *Loewen.* Mary argues that Dr. Benson's diagnosis was either a misdiagnosis or a misleading diagnosis. We cannot conclude that it was a misdiagnosis because no testimony was received from Dr. Benson or Dr. Sabow. However, in relation to the notice question, the diagnosis was *misleading* to Mary, which is instrumental in this case. In the time period between Dr. Benson's diagnosis, on January 10, 1989, and the later diagnosis by Dr. Sabow, on October 2, 1991, Mary experienced chronic pain and sought medical attention six times to alleviate the pain.

However, she was functioning under the perception that she had a disease which could be improved by performing recommended exercises. Because of Dr. Benson's diagnosis, she was not aware that her injury was related to the January 6, 1989 incident at Morrell until October 2, 1991. In this respect, it is important to note that neither the DOL nor the circuit court found Mary to lack credibility.

[¶ 28.] The statute in effect at the time of Mary's injury, SDCL 62–7–10, required that an employee provide written notice to her employer within thirty days of a work-related injury.

[¶ 29.] Because of Dr. Benson's diagnosis, which was misleading to Mary in respect to notice, she was not aware of the "nature, seriousness and probable compensable character" of her injury until October 2, 1991. Therefore, for Worker's Compensation purposes, the date of Mary's first recognition of a compensable injury was October 2, 1991. Mary provided written notice of her work-related injury, which was received by DOL on October 31, 1991. This was within thirty days of October 2, 1991, when she first recognized that she had a compensable injury.

[¶ 30.] Reversed and remanded.

[¶ 31.] KONENKAMP and GILBERTSON, Justices, concur.

[¶ 32.] MILLER, Chief Justice, and AMUNDSON, Justice, dissent.

AMUNDSON, Justice (dissenting).

[¶ 33.] I respectfully dissent.

[¶ 34.] In reviewing questions of fact, this court must determine whether the agency's findings are clearly erroneous. Further, "the question is not whether there is substantial evidence contrary to the agency finding, but whether there is substantial evidence to support the agency finding.... [T]he court shall give great weight to findings made and inferences drawn by an agency on questions of fact."

*Egemo v. Flores,* 470 N.W.2d 817, 819–20 (S.D.1991) (citations omitted). We have often stated,

we are not bound by the circuit court's decision. "The Supreme Court [reviews] the administrative agency's decision ... unaided by any presumption that the circuit court's decision was correct." Similarly, we give no deference to Director's decision since it is based entirely upon his review of the same record which we have before us. We are as capable of reading the record as the Director.

*Kurtz v. SCI,* 1998 SD 37, ¶ 10, 576 N.W.2d 878, 882 (citations omitted).

[¶ 35.] The majority opinion concludes that Vu's diagnosis was "misleading" to excuse her failure to provide notice to John Morrell within the statutorily prescribed time period. Further, the majority specifically stated that "[w]e cannot conclude that it was a misdiagnosis because no testimony was received from Dr. Benson or Dr. Sabow." Without such testimony, how can we say that it was *misleading* either? A review of the record reflects no findings or conclusions by either Department or the Circuit Court in regards to whether the diagnosis was a misdiagnosis or misleading. How can this Court make such a finding without any supporting evidence on that issue? I submit we cannot and should not make such conclusory findings without ample supporting evidence in the record. Instead, our review should focus on whether ample evidence *exists in the record* to support Department's findings. *See Egemo,* 470 N.W.2d at 819–20.

[¶ 36.] Under SDCL 62–7–10, an employee who claims compensation for an injury must provide notice to the employer. This " 'time period for notice or claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness and probable compensable character of [the] injury or disease.' " *Vaughn v. John Morrell & Co.,* 2000 SD 31, ¶ 13, 606 N.W.2d 919, 922 (quoting *Miller v. Lake Area Hosp.,* 1996 SD 89, ¶ 14, 551 N.W.2d 817, 820 (citation omitted)). "Whether the claimant's conduct is reasonable is determined 'in the light of

[her] own education and intelligence, not in the light of the standard of some hypothetical reasonable person of the kind familiar to tort law.'" *Id.* (quoting *Loewen v. Hyman Freightways, Inc.,* 1997 SD 2, ¶ 9, 557 N.W.2d 764, 768 (citation omitted)).

[¶ 37.] The findings in the record concluded that "Vu's testimony is not supported by the evidence as a whole" and Vu "failed to prove by a preponderance of the evidence that [John Morrell] had actual or constructive knowledge of an alleged work injury[.]" The circuit court also held,

> [t]he ALJ found as a matter of law that Vu should have known at the time she quit her employment with Morrell that she was suffering from a compensable work injury or, at the very latest, should have recognized the nature, seriousness and probable compensable nature of her injury at the time her injury affected her ability to perform job tasks for other employers. The Department's Conclusion is not in error.

[¶ 38.] In the present case, on January 6, 1989, Vu had reached over her table to grab a large cut of pork when she felt a "terrible pain" in her back. As a result of this pain, which she "never had before," she was excused from her line to go to the nurse's station. Her supervisor had asked her whether she "needed help down the stairs," but she was able to go to the nurse's office herself. Vu stated during her deposition that on January 9, she contacted the nurse's station and told the nurse that she had bent over at home and was unable to straighten up *due to the injury she sustained at work.* She also stated that she told her other supervisor that she had an appointment for her back because "[w]hen I was working the other day ... something happened[.]" Vu ultimately went to see Dr. Gail Benson, the John Morrell doctor, on January 10 about the pain in her back. Vu quit her job three months later in April 1989 because of the pain in her back. She continued to suffer back pain for over two years and finally sought further treatment on October 2, 1991.

[¶ 39.] The facts reflect that Vu reasonably should have had knowledge of her "work-related" back injury. Vu felt the pain in her back when she reached over her table and reported to the nurse's office to lie down. Vu claims to have told the nurse over the phone that she could not straighten her back because of the injury she sustained at work. Vu ultimately went to the doctor regarding this back injury. Also, after leaving employment with Morrell, the record reveals numerous doctor visits by Vu where she claimed continuing back problems.[7] Finally, the record shows

---

7. Vu submitted the following timeline in her brief to the Division of Labor and Management:

| Date | Facility | Treatment |
| --- | --- | --- |
| 1-6-89 | Morrell | DATE OF INJURY |
|  |  | Went to Morrell nurses station |
|  | .... |  |
| 1-10-89 | Central Plains Clinic | Saw Dr. Benson. |
| 4/89 | Morrell | Mary quits John Morrell |
|  | .... |  |
| Date Unknown [After 9-13-89] | Sioux San Hospital | Requests to see neurologist regarding back; low back pain unresponsive to medical therapy. |
| 8-27-90 | Sioux San Hospital | Lower back pain for 1½ years. |
| 9-18-90 | Rapid City Regional Hospital | Chronic low back pain for 3 years. |
| 9-20-90 | Sioux San Hospital | Follow up on back pain. |
| Date Unknown | Sioux San Hospital | Chronic back pain – problem About 2 years ago. |
|  |  | Exam: tenderness to palpation lower lumber spine. |
| 10-26-90 | Sioux San | Chronic back pain – spasms in lower back going down both legs. |
| Date Unknown | Sioux San | Here for low back pain |
|  | .... |  |
| 10-2-91 | Dr. Sabow | Injured her back at John Morrell. |

that Vu had prior experience with injuries involving workers' compensation while at Morrell. A review of all the facts shows that Vu, in light of her education and intelligence, should have clearly recognized "the nature, seriousness and probable compensable character" of her injury. In *Miller*, we addressed a situation where workers' compensation claimant had repeated doctor visits for an injury to her elbow, but was now claiming she had a reasonable excuse for failing to give timely notice to his employer. *See* 1996 SD 89, ¶¶ 2–6, 551 N.W.2d at 818–19. We concluded that this evidence supported the finding that claimant had no reasonable excuse for not timely notifying employer. *See id.*, 1996 SD 89, ¶ 18, 551 N.W.2d at 822. Further, in *Loewen*, claimant had hurt his back and suffered acute pain while at the workplace. *See* 1997 SD 2, ¶¶ 3–4, 557 N.W.2d at 765. Claimant was aware of the acute nature of the back injury at its occurrence. We held that no timely notice was given to employer based upon this fact. *See id.*, 1997 SD 2, ¶ 16, 557 N.W.2d at 768. In the present case, Vu's knowledge of the acute pain at the time of her injury and her history of doctor visits support the fact that she had knowledge of the compensable nature of her injury long before reporting it.

[¶ 40.] We previously noted in *Vaughn*, "the purpose of the notice requirement ... is 'to give the employer opportunity to investigate the injury while the facts are accessible.'" 2000 SD 31, ¶ 20, 606 N.W.2d at 923 (quoting *Loewen*, 1997 SD 2, ¶.18, 557 N.W.2d at 768). For approximately thirty-two months, Vu had back pain, but never advised her employer of her condition. With this lapse of time between the injury and the filing of the claim, I submit that employer has been totally thwarted from having a meaningful opportunity to investigate Vu's claim.

[¶ 41.] The record supports Department's findings and I would affirm.

[¶ 42.] MILLER, Chief Justice, joins this dissent.