Christopher LIEN, Claimant
and Appellant,

v.

MIRACLE SPAN CORPORATION,
Employer and Appellee,

and

St. Paul Fire and Marine Insurance
Company, Insurer and Appellee.

No. 16842.

Supreme Court of South Dakota.

Considered on Briefs March 22, 1990.

Decided May 30, 1990.

Ronald L. Schulz of Green, Schulz, Roby & Ford, Watertown, for claimant and appellant.

Ronald J. Hall of Siegel, Barnett & Schutz, Aberdeen, for employer, insurer and appellee.

MILLER, Justice.

In this worker's compensation appeal, we affirm the trial court and hold that the Department of Labor did not err in denying additional benefits or in applying the "last injurious exposure" rule.

· FACTS

Claimant Christopher Lien had been employed by Miracle Span (employer) in 1974. On June 15 of that year, he injured his

back while working. He had been carrying a cylinder for a machine when he slipped on a patch of oil.

Initially, he sought medical attention from Dr. Micheli in Watertown, South Dakota, who referred him to Dr. Van Demark, an orthopedic surgeon in Sioux Falls. Claimant was diagnosed as having a herniated disc in his back. This injury required him to undergo surgery. (The nature of this surgery was a lumbar laminectomy performed by Dr. Van Demark.)

Ultimately, claimant received worker's compensation with all medical expenses paid by employer's insurer, St. Paul Fire & Marine Insurance Company. He also received compensation for permanent partial disability. An "Agreement as to Compensation" was entered into between the parties, which was filed with and approved by the Department of Labor in 1975. From that time until May, 1981, claimant was relatively symptom free of any back pain.

In April 1979, claimant began working for the Department of Labor in its Spearfish Job Services Office. Part of his work consisted of traveling to Deadwood, Sturgis and Belle Fourche conducting itinerant service interviews. Claimant testified that in May, 1981, he was preparing to go to Deadwood and as he was getting into his car he felt "a very sharp, stabbing pain" in his lower back. He testified that over the next two or three days he got "progressively stiffer and sorer" to the point where it was painful to move and bend over. Consequently, he consulted Dr. Boyer, an orthopedic surgeon in Rapid City. Upon learning of claimant's 1974 injury and surgery, Dr. Boyer stated that these symptoms were not uncommon. The doctor recommended that claimant go home and "lay down" for a couple weeks until the pain subsided. Subsequently, claimant contacted Dr. Sabo, a chiropractor in Sturgis, who suggested using a home-made figure eight traction device to relieve the pain. Claimant used the device and it helped to some degree.

In the summer of 1983, claimant moved to Pierre due to a promotion he received with Department. In October of that year,

he again began having problems with his back. As a consequence thereof, he contacted Dr. Winkler, a local chiropractor, and related the history of his back problems. Claimant explained that Dr. Winkler adjusted his spine, relieving the pain. Claimant indicated that the pain he received prior to his contacting Dr. Winkler stemmed from riding in his jeep all day while pheasant hunting. He went back to Dr. Winkler about two or three more times, usually resulting from some previous exercise such as racquetball, cross-country skiing, softball, etc.

In the spring of 1984, claimant began seeing Dr. Fagerstrom, a chiropractor who had purchased Dr. Winkler's practice. Essentially, Dr. Fagerstrom used the same techniques used by Dr. Winkler in addition to treatment with ultrasound and muscle stimulation in order to relax the muscles. This treatment occurred fairly regularly between 1984 and 1985. In October 1985, the treatment failed to be effective. Claimant then began consulting with Dr. Stout an orthopedic surgeon in Pierre, who suggested bed rest and refraining from doing anything that might aggravate the pain.

Claimant relates that in late October, 1985, he had been to a meeting in Madison and drove back to Pierre on a Friday (approximately 180 miles). He states that as a result of the drive he was sore all weekend. Early the following week, he went to see Dr. Fagerstrom and received treatment similar to that which he had previously undergone. Claimant further indicates that he began to suspect at this time that he had another herniated disc. His suspicions were based on the similar sensation of pain he was feeling compared to that which he suffered with the first herniated disc in 1974. This time he returned to see Dr. Stout, who then prescribed some medication. Further treatment by Dr. Stout resulted in a diagnosis of at least one and possibly two herniated discs.

Claimant decided in late October or early November 1986 to consult with his original surgeon Dr. Van Demark. Dr. Van Demark agreed that there was a herniated disc and referred him to Dr. Johnson, a

neurosurgeon. (Dr. Van Demark was no longer performing the applicable surgery.) Dr. Johnson performed a partial hemilaminectomy. Claimant states he recovered well and went back to work in February 1987.

Prior to his last surgery, claimant, for the first time subsequent to the 1975 settlement, filed a claim with employer's insurer for reimbursement or payment of expenses he incurred and was incurring from his recent back problems. The claim was denied. In July 1986, claimant filed a claim and petition for hearing with Department. The hearing was held in October, 1988, subsequent to claimant's last surgery. Department ultimately denied and dismissed the petition, concluding that employer and insurer had paid all medical expenses, temporary total disability and permanent partial disability which it owed claimant. (He sought to recover temporary total disability compensation for 11.875 weeks of missed employment, permanent partial disability and payment of all medical expenses.) Claimant appealed Department's decision to the circuit court which affirmed, approved and adopted Department's findings of fact and conclusions of law and dismissed claimant's appeal with prejudice. Claimant appeals.

## DECISION

### Scope of Review

Before addressing the issues, we must resolve whether we are faced with questions of fact or of law.

When the issue is a question of law, the decisions of the administrative agency and the circuit court are fully reviewable. *Matter of Change of Bed Category of Tieszen*, 343 N.W.2d 97 (S.D.1984); *Nash Finch Co. v. S.D. Dept. of Revenue*, 312 N.W.2d 470 (S.D.1981). When the issue is a question of fact, we ascertain whether the administrative agency was clearly erroneous. *Matter of S.D. Water Management Board*, 351 N.W.2d 119 (S.D.1984); *State, Div. of Human Rights v. Miller*, 349 N.W.2d 42 (S.D.1984). *Permann v. Dept. of Labor, Unemployment Ins. Div.*, 411 N.W.2d 113, 116 (S.D.

1987) (citing *Johnson v. Skelly Oil Co.*, 359 N.W.2d 130, 132 (S.D.1984)); *see also Deuschle v. Bak Const. Co.*, 443 N.W.2d 5 (S.D.1989); *Application of Northwestern Bell Tel. Co.*, 382 N.W.2d 413 (S.D.1986).

 The primary dispute between the parties concerns whether the claimant's back problems were causally related to his 1974 injury. Resolution of this issue is determinative of his claim and is clearly a question of fact, *i.e.*, "one that is founded 'on the application of fact-finding tribunal's experience with the mainsprings of human conduct,'" *Permann, supra* at 119 (citing *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.1984)), the answer to which is found in the testimony of the witnesses. Because our standard of review is governed by SDCL 1–26–36, we are required to give great weight to the findings made and inferences drawn by the agency on questions of fact. *Deuschle, supra.* Due regard shall be given to the opportunity of the agency to judge the credibility of the witness. *N.W. Bell, supra.* In doing so, "[w]e do not substitute our judgment for the agency's judgment on the weight of the evidence pertaining to the questions of fact[.]" *Permann, supra* at 116 (citations omitted). The test is whether after reviewing all the evidence we are left with a definite and firm conviction that a mistake has been made. *Dakota Harvestore Systems, Inc. v. S.D. Dept. of Rev.*, 331 N.W.2d 828 (S.D.1983). Additionally, we point out that when reviewing evidence presented by deposition we do not apply the clearly erroneous rule but review that testimony as though presented here for the first time. *N.W. Bell, supra.*

### I

WHETHER DEPARTMENT WAS CLEARLY ERRONEOUS IN FINDING CLAIMANT'S ADDITIONAL BACK PROBLEMS WERE CAUSALLY RELATED TO AN ADDITIONAL INJURY OR AGGRAVATION THAT OCCURRED BETWEEN MAY 1981 AND OCTOBER 1986.

 Claimant has shotgunned several issues (challenging virtually every material fact finding of Department) which can be

merged into one main issue since they all attack findings relating to claimant's back problems and the causation thereof.

We find the testimony of claimant to be particularly significant. In his deposition and at the hearing, he testified that he was virtually symptom-free of pain after his surgery in 1974 until 1981. Beginning May 1981, he indicated he began having back problems after the incident where he "wrenched" his back while getting into his car to drive to Deadwood. He also testified that after that time any extended period of travel in a car aggravated his lower back pain.

We note that claimant by his own admission continued to hunt, play racquetball, softball and cross-country ski. It is also significant that claimant is able to specifically pinpoint an exact moment in time when he began having problems with his back which required him to begin consulting various orthopedic surgeons and chiropractors (that point being May 1981 when he was entering his car to go on a business trip to Deadwood for Department). His pain was attributed to a very specific physical act. He also pinpointed a return business trip for Department from Madison as a significant contribution to the pain he was experiencing.

Based on all of the evidence (including the medical testimony), we are of the opinion that Department was not clearly erroneous in its findings. *Deuschle, supra; Permann, supra; Water Management Board, supra; Lawler v. Windmill Restaurant,* 435 N.W.2d 708 (S.D.1989).

## ISSUE II

WHETHER DEPARTMENT PROPERLY APPLIED THE "LAST INJURIOUS EXPOSURE" RULE.

■ Claimant argues, grounded on his assertion that Department's findings are clearly erroneous, that the application of "the last injurious exposure rule" was in error, as a matter of law. The "rule provides that in successive injury cases full liability is placed upon the insurance carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability." *Novak v. C.J. Grossen-*

*burg & Son,* 89 S.D. 308, 311, 232 N.W.2d 463, 465 (1975).

In *Novak,* claimant had injured his back in the course of his employment in July 1967. The employer's insurer at that time paid medical expenses resulting from the injury. Claimant returned to work. One and one-half years' later, in January 1969, claimant suffered another injury to his back in the course of his employment with the same employer. This resulted in surgery. Employer was under a new insurer at this time who paid the medical expenses and compensation. Approximately six months later while back to work, claimant began experiencing great pain which got progressively worse. He was forced to quit work and seek hospitalization. This court recognized that had Department found that the January, 1969, accident had caused all the successive injuries and disability then the employer's insurer at the time of the injury and surgery would have to bear full liability under the last injurious exposure rule.

Claimant argues that the rule should not apply here because, in *Novak,* the court was dealing with successive insurers while here we are dealing with successive employers. In *Novak,* we cited 4 Larson, *Workmen's Compensation Law,* § 95.00 for the "last injurious exposure" rule. We also recognize and note that the treatise specifically states:

> The successive carrier problem arises when a worker suffers two or more episodes of disability with an intervening change of employers *or change of insurance carriers*[.] (Emphasis added.)

4 *Larson, supra* at § 95.11. We agree with the entirety of the above quotation. Therefore, that language is equally applicable here.

We have reviewed all of claimant's issues and find those not specifically addressed as likewise lacking in merit.

Affirmed.

All the Justices concur.