1996 SD 89

Juliene MILLER, Employee,
Claimant and Appellee,

v.

LAKE AREA HOSPITAL, a Successor in
Interest, Employer and Appellant,

and

Phico Insurance Company,
Insurer and Appellant.

No. 19326.

Supreme Court of South Dakota.

Considered on Briefs March 14, 1996.

Decided July 17, 1996.

Lee Schoenbeck and Jack Hieb, Webster, for appellee.

Susan Jansa Brunick and Sandra K. Hoglund of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellants.

AMUNDSON, Justice.

[¶ 1] Lake Area Hospital and Phico Insurance Company (Hospital) appeal the circuit court's reversal of the Department of Labor's (Department) decision denying worker's compensation benefits for Julienne Miller (Claimant). We reverse.

### FACTS AND PROCEDURE

[¶ 2] Claimant was originally diagnosed with tendinitis in her right elbow (tennis elbow) in 1978 when she was typing part-time in her home in St. Paul, Minnesota, for the College of St. Catherine, Midwest Medical and Midwest Ski. On at least seven occasions in 1979, 1982 and 1984, various doctors also saw Claimant regarding her tendinitis. In August 1983 Claimant began work for Dakotah in Webster as a quilter, hemmer, binder and inspector. On August 24, 1984, Claimant's family doctor referred her to Dr. Van Demark. Dr. Van Demark diagnosed Claimant with bilateral carpel tunnel syndrome in her right wrist and tendinitis in her right elbow. Dr. Van Demark's treatment plan included placing Claimant in night splints and on part-time work. Dr. Van Demark scheduled a return visit in six weeks, however, Claimant did not return. Claimant also saw Dr. Harlow during this period of time for her neck, wrist and elbow. Both Dr. Harlow and Dr. Van Demark recommended Claimant seek other employment.

[¶ 3] Shortly thereafter, on October 16, 1984, Claimant left Dakotah due to the doctor's recommendations and obtained employment at Hospital in the medical records office. Claimant, when filling in her job application form, did not disclose any physical disabilities or chronic diseases, including problems with her joints. On October 25, 1984, Claimant, pursuant to Hospital's policy, underwent a physical examination by a doctor designated by Hospital. A questionnaire that accompanied this examination was completed by Claimant. Claimant's answers again stated that she did not have a "defect, deformity or disease which may interfere" with her work. Dr. Nelson, Claimant's family doctor, performed this examination for Hospital and he noted that Claimant's joints and extremities were normal. Dr. Nelson was unaware of all of the problems Claimant had been having with her elbow.

[¶ 4] Although Claimant's supervisors realized in 1987 that Claimant was having problems with her elbow later in her employment, the supervisors did not know it was work-related and the problems did not affect her job performance. In fact, Claimant received excellent employment evaluations from 1984 through 1988. According to Claimant's supervisor, if Claimant's job performance was affected by her injury, it would have been noted on the performance evaluation. In November 1987 Claimant was treated by Dr. Nelson for discomfort on her right elbow. Claimant received an injection and the problem was resolved. In 1988 Claimant returned to Dr. Harlow for cervical neck problems. Claimant was referred to a physical therapist whom she saw five times for both her neck and elbow problems. The physical therapist told Claimant that the elbow was being aggravated by work.

[¶ 5] In September 1991 Claimant resumed treatment with her physical therapist for her elbow. The physical therapist once again advised Claimant that her tendinitis condition was being aggravated by her work. In

November 1991 the physical therapist referred Claimant to Dr. Seeman for an evaluation. At this time, Dr. Seeman placed Claimant in a cast from November 25 until December 20, 1991. This treatment did not correct the elbow pain. Next, Dr. Seeman performed surgery on the right elbow on February 11, 1992. Claimant did not file a workers' compensation claim until September 1992.

[¶ 6] On March 2, 1994, a hearing was held before the South Dakota Department of Labor (Department). The issues presented were: (1) whether Claimant falsified her employment application; (2) whether Hospital had notice of the injury; and (3) whether the work at Hospital contributed to the disability. Department held that: (1) although Claimant did not honestly answer the employment application, Hospital did not demonstrate sufficient reliance upon the application to preclude Claimant from receiving workers' compensation benefits on the grounds of falsification; (2) Claimant failed to meet her burden of providing timely notice to Hospital and failed to offer a reasonable excuse for not providing timely notice; and (3) since Hospital did not receive timely notice of the injury, Department did not decide the issue of whether Claimant's employment activities at Hospital were causally related to her injury.

[¶ 7] Claimant appealed Department's decision on the issue of timely notice to the circuit court. Hospital filed a notice of review regarding the falsification issue. The circuit court determined that Department did not use the proper test to determine whether Hospital received proper notice, therefore, this issue was reversed and remanded for new trial. As to the falsification issue, the circuit court upheld Department's decision that Hospital had not relied on the falsification of the application sufficiently to require a denial of workers' compensation benefits. Hospital now raises the following issues on appeal:

    I.   Whether Claimant failed to give timely notice of her elbow injury to Hospital, without reasonable excuse for such failure?

   II.  Whether Hospital sufficiently relied upon Claimant's falsification of her employment application so as to bar her from workers' compensation benefits?

## STANDARD OF REVIEW

[¶ 8] We review administrative decisions the same as the circuit court. *Schuck v. John Morrell & Co.*, 529 N.W.2d 894, 896 (S.D.1995). Factual findings will be reviewed under the clearly erroneous standard. *Beckman v. John Morrell & Co.*, 462 N.W.2d 505, 507 (S.D.1990). Using this standard, we do not search the record to reverse, rather we determine whether there is substantial evidence to support Department's finding. *Lawler v. Windmill Restaurant*, 435 N.W.2d 708, 711 (S.D.1989). Unless we are left with a definite and firm conviction that a mistake has been made, we will uphold Department's factual determination. *Lien v. Miracle Span Corp.*, 456 N.W.2d 563, 565 (S.D.1990).

[¶ 9] Department's conclusions of law are reviewed *de novo*. *Sudrla v. Commercial Asphalt & Materials*, 465 N.W.2d 620, 622 (S.D.1991). Mixed questions of law and fact are also fully reviewable. *Fiegen v. North Star, Ltd.*, 467 N.W.2d 748, 750 (S.D. 1991). Deposition evidence is fully reviewable, using the *de novo* standard. *Lien*, 456 N.W.2d at 565. Claimant still retains the burden of proving all facts essential to compensation. *Day v. John Morrell & Co.*, 490 N.W.2d 720, 724 (S.D.1992).

[¶ 10] **Whether Claimant failed to give timely notice of her elbow injury to Hospital, without reasonable excuse for such failure?**

[¶ 11] Claimant has the burden of proving that she provided timely notice of her injury or that Hospital had actual knowledge of the injury. SDCL 62–7–10; *Schuck*, 529 N.W.2d at 897; *King v. Johnson Bros. Constr. Co*, 83 S.D. 69, 73, 155 N.W.2d 183, 185 (1967); *Schindler v. Manchester Biscuit Co.*, 71 S.D. 336, 338, 24 N.W.2d 76, 77 (1946). Not only must Claimant prove Hospital had notice of an injury, but also must prove that Hospital was on notice of the work-related nature of the injury. *Tieszen v. John Morrell & Co.*, 528 N.W.2d 401, 404

(S.D.1995); *Streyle v. Steiner Corp.*, 345 N.W.2d 865, 866 (S.D.1984). "The intention of the Workmen's Compensation Act is that an employer be fairly apprised of an injury so that there may be an opportunity to investigate its cause and nature." *Schuck,* 529 N.W.2d at 897.

[¶ 12] SDCL 62–7–10 requires a claimant to file a written notice of an injury within thirty days of the injury.[1] Department found the date of injury to be 1987. Claimant did not provide written notice of the work-related nature of her injury until September 1992. Therefore, Claimant must show that Hospital had actual or constructive notice of her claim during this interim period, or that she had good cause for failing to give the requisite notice. *Schuck,* 529 N.W.2d at 898; *Tieszen,* 528 N.W.2d at 404 (citations omitted). "The fact that [Claimant] suffered from pain and other symptoms is not the determinative factor and will not support a determination that [Claimant] had knowledge of the existence or extent of [her] injury." *Bearshield v. City of Gregory,* 278 N.W.2d 164, 166 (S.D.1979).

[¶ 13] Claimant admits that she was told explicitly in September 1991 that work at hospital was aggravating the tendinitis condition in her elbow. In fact, she had left her previous employment in 1984 due to the advice of Dr. Harlow and Dr. Van Demark. When applying for the position with Hospital, Claimant failed to disclose the condition which caused her to terminate her employment with Dakotah. Furthermore, Claimant did not inform Dr. Nelson, Hospital's examining doctor, that she had problems with her elbow when he examined her October 25, 1984. In 1987 Claimant again sought treatment for the symptoms in her right elbow. Dr. Nelson advised Claimant to see Dr. Har-

low, however, Claimant did not follow this advice. In 1988 Claimant's physical therapist told her of the effect her work had upon her elbow condition. Claimant testified she realized that her elbow "healed" to some extent while she was away from work. Also, Claimant admitted that her elbow hurt more after work than on weekends. In September 1991 Claimant's physical therapist again explained to her the relationship between work and her symptoms. Claimant was referred to a specialist in November 1991. This time Claimant followed the physical therapist's advice and did see the specialist. It was at this time Claimant told her supervisor about the physical therapist's concern that work was aggravating her elbow.

[¶ 14] Hospital argues that Claimant could have discovered the work-related nature of her elbow injury if she had asked her doctor or followed up with the specialist in 1987. At this time, Claimant received an injection which improved the condition of the elbow. The test Hospital would have us adopt would require Claimant to practice due diligence. The proper test is: "The time period for notice or claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness and probable compensable character of [the] injury or disease." 2B Arthur Larson, Larson's Workmen's Compensation Law, § 78.41(a) at 15–185–86 (1995). This reasonable person test does not place an affirmative duty on Claimant to continue seeking medical advice where further treatment is not warranted and there is no suggestion that the condition may have a work-related component. Nonetheless, in 1987, Claimant testified that her work required her to seek medical assistance.[2] Claimant cannot claim a

---

1. SDCL 62–7–10 was amended in 1994. However, the thirty-day time limit was in effect at the time this claim arose. *See West v. John Morrell & Co.,* 460 N.W.2d 745, 746–47 (S.D.1990) (statutes effective upon the date of a claimant's injury control the resolution of the workers' compensation claim). The latest alleged date that Claimant's injury occurred is November 1991, still prior to the 1994 amendment.

2. The testimony from the Department hearing is as follows:

   Hospital: And at that time [1987], you suspected that the work you were doing was the reason that you were needing to go see Dr. Nelson; isn't that correct?
   Claimant: Yes, I did.
   Hospital: And you didn't tell anyone at [Hospital] that you were seeking treatment for your elbow in 1987, did you?
   Claimant: They knew when I went over to see the doctor, because I went from the office, saw the doctor, came back to the office.

better version of the facts than her own testimony. *Bosse v. Quam,* 537 N.W.2d 8, 12 (1995); *Tieszen,* 528 N.W.2d at 406 (Amundson, J., dissenting) (citations omitted). In addition, even if we found that Claimant's suspicions were not enough to begin the running of the notice statute in 1987, Claimant was advised by her physical therapist in 1988 that her symptoms were work related. Neither Claimant's oral notice to employer in 1991, nor her written notice in September 1992, satisfied the thirty-day requirement under SDCL 62–7–10.

[¶ 15] This record discloses that Hospital lost several opportunities for investigation, based on the fact that: (1) in 1984 when Claimant applied for work, she did not disclose the tendinitis problem, therefore preventing examination as to the causal relationship between the prior work-related tendinitis condition in Claimant's right elbow and the status of Claimant in November 1991; and (2) in 1987 and 1988 Claimant received treatment for the problem and was advised the preexisting condition was being aggravated by her work. In addition, Hospital was denied the opportunity to modify or change Claimant's work requirements.

[¶ 16] Recently we addressed the issue of notice in *Tieszen,* 528 N.W.2d at 404, wherein we stated that until an employee is aware that her injuries are severe enough that they require time off from work, the injuries are not "compensable" and, therefore, the time limit of thirty days is tolled. *Id.* at 405. "When it is said that the compensation claim periods should not begin to run until the claim itself is compensable [*see* SDCL 62–7–10] this does not mean that the claim period never runs until the occurrence of actual disability in the sense of quitting work[.]" 2B Larson § 78.51 at 15–371. Claimant can-

not be allowed to delay Hospital's investigation of her condition. *Id.* at 15-376; *see also Keeler v. Industrial Commission,* 125 Ariz. 333, 609 P.2d 603 (Ct.App.1980) (involving a gradually developing condition similar to tennis elbow).

[¶ 17] The circuit court in reversing Department relied on *Tieszen;* however, *Tieszen* is factually distinguishable from the case at hand. *Tieszen* involved a muscle strain located in the neck, back and shoulder, an injury which does not develop gradually, although it can become worse if left unattended. 528 N.W.2d at 403. Also, the plaintiff in *Tieszen* had reported to the first-aid station at work after he was injured. *Id.* After he visited the first-aid station, the plaintiff in *Tieszen* was referred to the company clinic. *Id.* According to the testimony given by Dr. Harlow, tendinitis located in the elbow is an injury that occurs gradually, and almost always becomes worse when left unattended. Also, *Tieszen* did not involve a claimant with a preexisting nondisclosed condition. In addition, *Tieszen* relies on an Arizona Supreme Court case that held "the notice period d[oes] not begin to run until the severity of the injury [is] medically diagnosed." *Id.* at 405 (citing *M.M. Sundt Constr. Company v. Comm'n of Ariz.,* 124 Ariz. 94, 96, 602 P.2d 475, 477 (1979). Department found the record supports that Claimant was diagnosed with tendinitis in her right elbow in 1978, 1987 and 1988. The circuit court's unfettered reliance on *Tieszen,* in that an employee must miss work in order for an injury to be compensable, ignores several case scenarios, including those cases where the employee may never miss work. Missing work is not a required element for entitlement to compensation under our law.

[¶ 18] Department's lengthy findings of fact found that: (1) Claimant had been aware

Hospital: But you didn't tell them that you suspected you were having to go over there because of the work you were doing?
Claimant: No.
Hospital: In 1987, you realized that your arm would hurt more after work than it would say on a weekend; is that correct?
Claimant: That's right.

Hospital: And so didn't that make you suspect that the work activities that you were being involved in might be causing the symptoms you were having?
Claimant: It should have, but I did not connect it. I did not know.
Hospital: But suspected?
Claimant: I suspected.

of her tendinitis problem in her right elbow since 1978; (2) the tendinitis condition required treatment again in 1987, when Claimant was employed by Hospital; (3) in 1987 Claimant suspected her work at Hospital was causing the symptoms in her elbow; and (4) Claimant's physical therapist advised her that her work was affecting her elbow.[3] Based on these findings, Department concluded that Claimant was required to give notice to Hospital in 1987. The record overwhelmingly supports these findings. The circuit court incorrectly held that *Tieszen* was applicable to the facts at hand when it held that an injury is not compensable until

the employee misses work. It must be remembered, that we review Department's decisions under the same standard as the circuit court. The Department's findings have substantial evidence to support them, therefore, the circuit court erred in reversing Department's decision. We reverse the circuit court's opinion as to the issue of notice and remand for reinstatement of Department's decision. Whether notice was given in September or November 1991 is irrelevant, for the thirty-day time limit expired well before either date. Therefore, Department's determination that Claimant did not timely notify Hospital was not clearly erroneous.

---

3. Department's findings stated:

I.

[Claimant] was diagnosed with tennis elbow in 1978.

II.

[Claimant] sought treatment for this condition in 1978, 1979 and 1982.

III.

In August of 1984, [Claimant] was seen for symptoms with her upper extremities which included her hands and wrists and at this time she was again diagnosed as having resistant tennis elbow.

IV.

Claimant had been aware of the diagnosis of tennis elbow since 1978. Every time she received treatment she was told she had tennis elbow.

V.

From and after the initial diagnosis in 1978, Claimant had recurring episodes of this condition.

VIII.

Dr. Van Demark diagnosed bilateral carpal tunnel syndrome and right tennis elbow [in 1984]. He explained the diagnosis, placed Claimant in night splints and placed her on part-time work.

IX.

In August of 1984, Dr. Van Demark took Claimant off work for two weeks because of her upper extremity problems, and explained the conditions to Claimant.

.  .  .  .  .

LIV.

Claimant's resistant tennis elbow required treatment in 1987.

LV.

In 1987, the treatment for her right elbow symptoms included an injection, and she was advised to wear splints. Claimant testified that following the injection the problem resolved.

LVI.

In 1987, Dr. Nelson recommended that Claimant be seen by Dr. Harlow because, despite seeing some improvement, this condition was something Claimant had trouble with before and Dr.

Nelson thought she should be seen by a specialist.

LVII.

Claimant declined to be seen by Dr. Harlow

LVIII.

In 1987, Claimant suspected that her work with [Hospital] was causing the symptoms she was experiencing in her right elbow.

LIX.

In 1987, Claimant suspected that the work she was doing was the reason she needed to see Dr. Nelson.

LX.

Aside from this, there is other evidence in the record indicating Claimant was aware of the nature and probable compensability of her condition in 1987.

LXI.

Claimant curtailed activities at home to save her arm for work, and there is testimony that in 1988, she discussed the effect of activities at work and at home on her arm with the physical therapist.

.  .  .  .  .

LXX.

Claimant was aware in 1987 and 1988 that her elbow improved when she was not working.

LXXI.

In 1988, Claimant was advised by [her physical therapist] of the fact that her work was affecting her elbow.

.  .  .  .  .

LXXXVII.

[Hospital] lost four years opportunity to investigate the causal source of this injury.

LXXXVIII.

The condition prior to 1984 was resistant tennis elbow. The condition in 1991 was chronic tennis elbow. The surgery was to remove scar tissue at the elbow.

LXXXIX.

Dr. Seeman's diagnosis in 1991 was chronic right tennis elbow. The diagnosis in 1984 was resistant tennis elbow. The diagnosis was the same diagnosis as in 1978, 1979, 1982 and 1984. Further, Dr. Van Demark testifies that the 1991 surgery was for the very condition he diagnosed in 1984.

[¶ 19] Since we hold that Claimant failed to properly notify Hospital, there is no reason to reach the falsification issue. Based on the foregoing analysis, we reverse and remand for reinstatement of Department's finding that Claimant failed to timely notify Hospital.

[¶ 20] MILLER, C.J., and SABERS, KONENKAMP, and GILBERTSON, JJ., concur.