#25106-aff in pt & rev in pt-GAS

**2009 SD 68**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

TERRY McNEIL,                                          Claimant and Appellant,

v.

SUPERIOR SIDING, INC.,                          Employer and Appellee,

and

ACUITY,                                                    Insurer and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE LORI S. WILBUR
Judge

* * * *

ANTHONY P. BOLSON of
Beardsley, Jensen & Von Wald, Prof. LLC
Rapid City, South Dakota                          Attorneys for appellant.

MICHAEL S. McKNIGHT
CHARLES A. LARSON of
Boyce, Greenfield, Pashby & Welk, LLP
Sioux Falls, South Dakota                          Attorneys for appellees.

* * * *

CONSIDERED ON BRIEFS
ON MAY 26, 2009

OPINION FILED **07/29/09**

SEVERSON, Justice.

[¶1.] Terry McNeil appeals the circuit court's ruling that he failed to comply with the statutory notice requirement for reporting his work-related injury. We affirm in part and reverse in part.

## FACTS

[¶2.] McNeil injured his upper back on August 13, 2005, while working for Superior Siding, Inc. (Employer). He was moving a box of siding from one side of the jobsite to the other. After McNeil picked up the box and placed it on his shoulder, he heard a "pop" and felt numbness from his upper-left arm down to his fingers. The "pop" was in his upper back, between his shoulder blades. Although he described the pain as "intense" and like nothing he had ever experienced before, it did not cause him to drop the box. He continued to work the remainder of the day and did not miss any work due to the injury. The intense pain went away the same day, but McNeil testified that he had a "consistent" pain between his shoulder blades, and intermittent pain and numbness in his left arm. He testified that he was constantly stretching in an effort to "work out" the pain, but he did not believe the injury was serious. He thought he merely pulled or overworked a muscle, and that it would heal itself quickly. McNeil did not immediately report this injury to Employer or complete a first report of injury form.

[¶3.] McNeil continued to work full time for Employer. When the recurrent pain and discomfort became more frequent, McNeil realized his symptoms were not abating and he spoke with Employer. On November 8, 2005, McNeil and Employer completed a first report of injury form to submit to Acuity (Insurer). McNeil sought

medical treatment from Dr. Ryan Swenson for the upper-back injury for the first time on November 21, 2005. During the examination, Dr. Swenson triggered a nerve under McNeil's left arm, causing a sensation, unlike anything McNeil had ever felt before. After several treatments proved unsuccessful, Dr. Swenson referred McNeil to Dr. Tim Watt, a neurosurgeon. On September 11, 2006, Dr. Watt diagnosed McNeil with a "herniated disk with a calcific spur on the left at C7-T1," and explained that McNeil needed an anterior cervical decompression and fusion at C7-T1. McNeil filed a workers' compensation claim seeking benefits. Insurer denied McNeil's claim, alleging he failed to timely notify Employer of the injury.

[¶4.]      A bifurcated hearing was held before the Department of Labor (Department) on October 2, 2007, with the sole issue being whether McNeil complied with the notice requirement in SDCL 62-7-10. The Department held that McNeil did not immediately recognize the nature, seriousness and probable compensable character of the injury, and upon that recognition, McNeil made a first report of injury. The Department concluded that McNeil "had good cause for failing to give written notice within the three business day period [required under SDCL 62-7-10]."

[¶5.]      Employer and Insurer appealed to the circuit court. The circuit court reversed, concluding that the Department erred by using a subjective, rather than objective, standard in determining whether McNeil complied with the statutory notice requirement. Furthermore, the court held that, under an objective standard,

a reasonable person of McNeil's education and intelligence would have given timely notice to Employer.  Therefore, his claim was denied.  McNeil appeals.

## STANDARD OF REVIEW

[¶6.]        "We review appeals from administrative decisions in the same manner as the circuit court[,]" the standard for which is controlled by SDCL 1-26-37.  Kuhle v. Lecy Chiropractic, 2006 SD 16, ¶15, 711 NW2d 244, 247 (citations omitted).  "The Department's factual findings and credibility determinations are reviewed under the clearly erroneous standard."  *Id.* (citing Enger v. FMC, 1997 SD 70, ¶10, 565 NW2d 79, 83).  "We will reverse those findings only if we are definitely and firmly convinced a mistake has been made."  *Id.* (citing Gordon v. St. Mary's Healthcare Ctr., 2000 SD 130, ¶16, 617 NW2d 151, 157).  "Questions of law are reviewed de novo."  *Id.* ¶16 (citing *Enger*, 1997 SD 70, ¶10, 565 NW2d at 83).  Mixed questions of law and fact require further analysis.  *See* Permann v. S.D. Dep't of Labor, 411 NW2d 113, 119 (SD 1987).

> If application of the rule of law to the facts requires an inquiry that is 'essentially factual'–one that is founded 'on the application of the fact-finding tribunal's experience with the mainsprings of human conduct'–the concerns of judicial administration will favor the district court, and the district court's determination should be classified as one of fact reviewable under the clearly erroneous standard.  If, on the other hand, the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed de novo.

*Id.* (quoting United States v. McConney, 728 F2d 1195, 1202 (9thCir 1984)) (internal citations omitted).  *See also In re* Dorsey & Whitney Trust Co., LLC, 2001 SD 35, ¶¶5-6, 623 NW2d 468, 471.  Nevertheless, the burden is on the claimant to

#25106

prove all facts essential to compensation. *Kuhle*, 2006 SD 16, ¶16, 711 NW2d at 247

(citation omitted).

**Whether McNeil complied with SDCL 62-7-10's notice requirements.**

[¶7.]        SDCL 62-7-10[1] requires that an employer be provided written notice of

a compensable injury within three business days of its occurrence, unless the

employee can prove the employer had actual notice, or the employee had good cause

for not providing notice within a three-day period.  The "good cause" determination

"shall be liberally construed in favor of the employee."  SDCL 62-7-10.  "'The

purpose of the written notice requirement is to give the employer the opportunity to

investigate the injury while the facts are accessible.'"  Shykes v. Rapid City Hilton

---

1.    This statute provides:

> An employee who claims compensation for an injury shall
> immediately, or as soon thereafter as practical, notify the
> employer of the occurrence of the injury.  Written notice of the
> injury shall be provided to the employer no later than three
> business days after its occurrence.  The notice need not be in any
> particular form but must advise the employer of when, where,
> and how the injury occurred.  Failure to give notice as required
> by this section prohibits a claim for compensation under this
> title unless the employee or the employee's representative can
> show:
>
> (1) The employer or the employer's representative had actual
>     knowledge of the injury; or
>
> (2) The employer was given written notice after the date of the
>     injury and the employee had good cause for failing to give
>     written notice within the three business-day period, which
>     determination shall be liberally construed in favor of the
>     employee.

SDCL 62-7-10.

Inn, 2000 SD 123, ¶24, 616 NW2d 493, 499 (quoting Westergren v. Baptist Hosp. of Winner, 1996 SD 69, ¶18, 549 NW2d 390, 395). Notice of an injury to the employer is a condition precedent to compensation. *Id.*

[¶8.] It is well settled that "'[t]he time period for notice or claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness and probable compensable character of [the] injury or disease.'" Clausen v. N. Plains Recycling, 2003 SD 63, ¶13, 663 NW2d 685, 689 (quoting Miller v. Lake Area Hosp., 1996 SD 89, ¶14, 551 NW2d 817, 820 (quoting 2B Arthur Larson, Larson's Workmen's Compensation Law, § 78.41(a) at 15-185-86 (1995))). This is an objective standard based on a reasonable person of the claimant's education and intelligence. *Shykes*, 2000 SD 123, ¶42, 616 NW2d at 502 (stating that "[w]hether the claimant's conduct is reasonable is determined 'in the light of [her] own education and intelligence, not in the light of the standard of some hypothetical reasonable person of the kind familiar to tort law'" (citation omitted)).

[¶9.] Based on the testimony presented at the hearing, the Department found in pertinent part:

> 12. Employer does not require employees to report every injury that occurs on the jobsite, despite the language in the handbook.
>
> 15. If the minor injury becomes serious or is found later to be a serious injury, i.e. an infected scratch, then Employer will report the injury to their insurer.
>
> 17. Many employees complain daily about aches and pains due to sore muscles or overworked joints. These employees do not report the minor aches to employer as work-related injuries if the pain is not recurrent and the employee does not seek medical treatment for the pain.

19. Claimant injured his upper-back on August 13, 2005. Claimant was carrying a box of siding from one side of the jobsite to the other.

23. The pain was "intense" at that time; however, Claimant continued to work and finished the job.

24. Claimant neither dropped the box of siding nor stopped working when the upper-back pain started.

25. The intense pain went away the same day.

26. The next day Claimant still felt some pain between his shoulder blades. Claimant had pulled or overworked muscles in the past and assumed this injury was a minor pulled muscle.

27. Claimant believed that his upper-back ache would heal itself quickly and that it was not a serious injury.

31. Claimant did not think the upper-back injury was serious until his symptoms did not go away.

33. When the recurrent pain and discomfort became more frequent, Claimant realized the injury was serious and he spoke with Employer.

These findings are substantiated by the record, and there is no showing they are clearly erroneous. The Department concluded in part:

9. Claimant does not have the education or experience to know which of his aches and pains are serious injuries or are just muscle strains.

16. Claimant had made a prior injury report to Employer in December of 2003 for his lower-back injury. Similarly, Claimant reported an injury in January 2005 when he picked up a piece of equipment and fell to his knees in pain. Unlike either of those injuries, Claimant did not recognize the seriousness of the upper-back injury that occurred in August 2005.

17. Claimant's testimony was both plausible and credible.

22. Claimant complied with the notice requirement of SDCL 62-7-10.

23. Claimant "had good cause for failing to give written notice within the three business-day period."

24. Claimant notified Employer immediately after "recogniz[ing] the nature, seriousness and probable compensable character of [the] injury [or] disease."

In its memorandum opinion, the Department correctly indicated that the facts must be considered under an objective standard; however, it then failed to apply that standard, and instead employed a subjective standard. Therefore, we agree with the circuit court's holding that the Department erred by not employing an objective standard. That does not end the inquiry, however.

[¶10.] We must determine at what point a reasonable person of McNeil's education and intelligence should have recognized the nature, seriousness and probable compensable character of the injury. This is a mixed question of law and fact under the standards set forth in *Permann*, 411 NW2d at 119, and *Dorsey & Whitney Trust Co.*, 2001 SD 35, ¶6, 623 NW2d at 471. We determine the analysis of this issue requires us to primarily exercise judgment about legal principles and the question will be considered as one of law. Therefore, we review it de novo. *Permann*, 411 NW2d at 119.

[¶11.] Our case law provides guidance. In *Bearshield v. City of Gregory*, 278 NW2d 164 (SD 1979), the claimant received some glass splinters in his left eye after a brick was hurled through a window at the police station on December 13, 1972. Later the same day, a doctor removed the glass and washed the eye. The claimant continued to visit the doctor, however, because the eye continued to be irritated and red. In July of 1973, the claimant began suffering from frequent headaches and blurred vision. Not until the following year on November 20, 1974, did the claimant

learn from a doctor's examination that his left eye was damaged and blindness in that eye caused his headaches. After this diagnosis was confirmed in the coming months by two eye specialists, claimant notified the workers' compensation carrier of the injury. The Department determined that the claimant knew or should have known that he had a compensable injury in July of 1973, when he began suffering from blurred vision and headaches. The circuit court reversed and held that the claimant did not have knowledge of his compensable injury until he was diagnosed as being blind in the injured eye on November 20, 1974. We affirmed on appeal, and stated: "[T]he fact that [the claimant] suffered from pain and other symptoms is not the determinative factor and will not support a determination that [the claimant] had knowledge of the existence or extent of his injury." *Id.* at 166. "A claimant cannot be expected to be a diagnostician and, while he or she may be aware of a problem, until he or she is aware that the problem is a compensable injury, the statute of limitations does not begin to run." *Id.*

[¶12.]     The instant case is distinguishable from two of our previous cases: *Clausen v. Northern Plains Recycling*, 2003 SD 63, 663 NW2d 685, and *Loewen v. Hyman Freightways, Inc.*, 1997 SD 2, 557 NW2d 764. The claimant in *Clausen* experienced discomfort in his back while shoveling concrete shards on a job site. He informed a co-worker of the discomfort, and did not show up for work the following day. Despite the claimant's testimony otherwise, the Department found that the employer was not provided notice of the injury for eight days. We concluded that this finding was not clearly erroneous, and affirmed the conclusion of untimely notice. *Clausen*, 2003 SD 63, ¶23, 663 NW2d at 690-91. Notably, unlike the facts of

the instant case, the claimant in *Clausen* never alleged that the delayed notice to his employer was caused by his failure to recognize the serious nature of his back injury.

[¶13.]    In *Loewen*, we recognized that the claimant suffered an abrupt, acute injury in late May or early June of 1993, when he fell at work and hit his tailbone and left buttocks. He did not immediately seek medical treatment, and instead self-treated with rest and application of a heating pad. He testified he missed work due to the back problems incurred in the fall, but he never filed an injury report. Several weeks later, however, claimant fell again, this time while on vacation. After this fall, he sought medical treatment in August of 1993, and it was discovered that surgery was required for a disk extrusion. He informed his employer. Alleging the injury was due to his work-related fall, the claimant requested benefits. The Department denied benefits holding that the claimant failed to provide timely notice of the injury to his employer, and further held the claimant failed to prove causation. The circuit court reversed on the notice issue and affirmed on the causation issue. On appeal, we reversed the circuit court and reinstated the Department's determination that the claimant failed to provide timely notice because the claimant suffered "an abrupt, acute injury at the workplace," and, more importantly, according to the claimant's own testimony, "he was aware he had sustained a compensable injury immediately after it occurred in late May or early June." *Loewen*, 1997 SD 2, ¶16, 557 NW2d at 768. In the instant case, McNeil insists, and the Department found him credible, that, until November

2005, he was unaware of the nature, seriousness and probable compensable character of the injury. This was also supported by Employer's testimony.

[¶14.] This Court has determined that the date of injury tolls when the claimant is either misdiagnosed or the diagnosis is misleading to the claimant with respect to notice, and that the duty to notify the employer does not arise until the date when the compensable injury is known to the claimant. *See* Vu v. John Morrell & Co., 2000 SD 105, ¶29, 615 NW2d 171, 177; Pirrung v. Am. News Co., 75 SD 444, 447-48, 67 NW2d 748, 749-50 (1954) (stating that the duty to notify the employer does not arise until the date when the claimant learns she has sustained a compensable injury). Until today, this Court has not had the occasion to determine if this rule applies when the claimant *himself* fails to appreciate the seriousness of the injury. In doing so, we must apply the requisite objective standard.

[¶15.] McNeil is a knowledgeable, intelligent man. He graduated from high school and attended one semester of college. Furthermore, after beginning to work for Employer, McNeil quickly moved up within the business and became the owner's "right-hand man." Notably, however, McNeil had previous experience filing work-related injury reports. On two prior occasions, he filed reports for lower-back injuries. He testified that in both of those instances, the pain was so intense that it prevented him from continuing to work and he immediately went to the doctor. These injuries caused McNeil to miss additional days of work.

[¶16.] This Court cannot ignore the nature of work in which McNeil was involved. Employer and McNeil explained that due to the nature of the physical construction work being performed, not every little cut, bump, or muscle strain was

reported or examined by a doctor if the employee and supervisor determined it was not serious. McNeil testified that complaints regarding muscle aches were common.

[¶17.] With regard to the injury at issue, McNeil testified that he "heard a pop, got some tingling go through [his] arm, [and] felt some uncomfortableness [sic]." He described the "pop" like the sound made when "you crack your knuckles or you crack your back," and the tingling was described as feeling "like [his] arm fell asleep." He indicated that the sensation was like nothing he had ever felt before, but it did not cause him to drop the box of siding. Although not determinative of the issue, claimant continued to work that same day and did not miss any work in the coming days. *See Miller*, 1996 SD 89, ¶17, 551 NW2d at 821. McNeil testified that at the time of the injury, he did not think it was serious, and believed it was merely a pulled muscle.

[¶18.] McNeil mentioned the incident on two occasions to the physical therapist from whom he was seeking therapy for a different back injury. The medical record from August 15, 2005, provided, "Patient states he's feeling really good. Says his left upper extremity went tingly numb last week when he lifted some siding." The second entry dated August 30, 2005, provided in part: "[Patient] did indicate some increased upper back pain over the past couple weeks secondary to lifting at work." However, the therapist did not treat McNeil for this injury. McNeil stated that he would have requested treatment had he thought it was necessary.

[¶19.] McNeil testified that at the time he notified Employer on November 8, 2005, the discomfort and tingling sensation had become more frequent and he

realized that the symptoms were not abating even though he was constantly stretching. He sought medical treatment from Dr. Swenson on November 21, 2005. At this examination, Dr. Swenson triggered a nerve causing a sensation indicative of the seriousness of McNeil's injury. However, not until September 11, 2006 did McNeil learn he had a herniated disc.

[¶20.] Based on all of these facts, a reasonable person of McNeil's education and intelligence would not have realized the nature, seriousness and probable compensable character of the injury prior to the date he informed Employer.[2] We must remember that the fact that the claimant "suffered from pain and other symptoms is not the determinative factor and will not support a determination that [the claimant] had knowledge of the existence or extent of his injury." *Bearshield*, 278 NW2d at 166. Claimants are not expected to be diagnosticians. *Id.* Furthermore, the "good cause" determination under the statute must be liberally construed in favor of the employee. SDCL 62-7-10. Therefore, we conclude McNeil had good cause for not reporting the injury within three days of its occurrence. The circuit court is reversed in this regard.

[¶21.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

---

2. It is not necessary, however, "for the claimant to know the exact diagnosis or medical name for the condition if he or she knows enough about its nature to realize that it is both serious and work-connected." 7 Arthur Larson, Larson's Workmen's Compensation Law, § 126.05[4] at 126-22 (2008).