#25995-a-GAS

**2011 S.D. 91**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MARK DENNIS MCQUAY,                    Plaintiff and Appellant,

   v.

FISCHER FURNITURE,                     Employer and Appellee,

   and

ACUITY,                                Insurer and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MARK BARNETT
Judge

\* \* \* \*

DENNIS W. FINCH of
Finch Maks, Prof. LLC
Rapid City, South Dakota                Attorneys for appellant.

CHARLES A. LARSON of
Boyce, Greenfield, Pashby & Welk,LLP
Sioux Falls, South Dakota               Attorneys for appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
ON NOVEMBER 16, 2011

OPINION FILED **12/21/11**

#25995

SEVERSON, Justice

[¶1.] Mark Dennis McQuay received workers' compensation benefits for a neck and back injury he suffered on October 22, 2002, while working for Fischer Furniture. After his workers' compensation benefits were discontinued in March 2004, McQuay sought treatment for a low back condition. He petitioned the Department of Labor (Department) for workers' compensation benefits. The Department ruled McQuay did not prove his low back condition was related to his original October 22, 2002 work injury. The circuit court entered an order affirming the decision of the Department. We affirm.

## Background

[¶2.] McQuay was an employee at CarpetMart in Rapid City, South Dakota. CarpetMart is one of several stores owned by Fischer Furniture. McQuay's duties at CarpetMart included cutting carpet and vinyl remnants. He also worked in the warehouse and was frequently required to carry rolls of carpet and linoleum within the store. On October 22, 2002, while McQuay was carrying a bolt remnant on his shoulder, another remnant fell and struck McQuay on the head. Immediately after this incident, McQuay felt sore in his lower back and neck. McQuay had not been treated or diagnosed with back or neck problems prior to this incident.

[¶3.] The next day, at the direction of Fischer Furniture, McQuay was examined by Dr. Wayne Anderson at the Spearfish Health Center. Dr. Anderson assessed McQuay with a head contusion and neck pain. On October 30, 2002, McQuay saw Dr. Anderson a second time, complaining of low back pain primarily on the right side. Dr. Anderson conducted another examination of McQuay and

noted that his "[l]ow back has good range of motion with some tenderness on the right at the L2-L3 area." Dr. Anderson diagnosed McQuay with lumbar strain.

[¶4.] Dr. Anderson examined McQuay again on December 2, 2002 and assessed him with "low back pain with right L5 radiculopathy." Dr. Anderson ordered an MRI of McQuay's lumbar spine. On December 9, 2002, an MRI of McQuay's low back was performed at Black Hills Imaging Center. A doctor reviewed the MRI image and drafted a report indicating McQuay had a "normal MRI of the lumbar spine."

[¶5.] Dr. Anderson referred McQuay to Dr. Mark Simonson at The Rehab Doctors. McQuay visited Dr. Simonson on December 11, 2002. After conducting an examination of McQuay's low back, Dr. Simonson diagnosed McQuay with lumbar strain. McQuay continued to see Dr. Simonson to treat the pain in his low back. Several of Dr. Simonson's treatment notes indicate McQuay's low back pain improved while he treated with Dr. Simonson. In a January 24, 2003 record, Dr. Simonson stated McQuay was "doing well regarding his low back" and his "[l]ow back is doing good."

[¶6.] McQuay's workers' compensation benefits were discontinued as of March 2004. Although McQuay continued to undergo treatment for problems with his upper back and neck, he did not report experiencing low back pain until June 30, 2005, when he visited the Rapid City Community Health Center complaining of "left lower back pain radiating into his left thigh and upper calf." On August 5, 2005, McQuay sought treatment for his low back pain with Dr. Christopher Dietrich at The Rehab Doctors. Dr. Dietrich's notes indicate McQuay reported a "recurrence

of low back pain with no known injury." His records further indicate McQuay had experienced lower back pain in 2002 and 2003, but that this pain "resolved."

[¶7.]     McQuay sought treatment for his low back pain with Dr. John Lassegard at the Rapid City Community Health Center on October 4, 2005. According to Dr. Lassegard's records, McQuay reported experiencing "pain radiating to the lateral part of his thigh down to his knee over the last several months, getting worse." An MRI of McQuay's low back was conducted on October 7, 2005. Dr. Lassegard reviewed the MRI image and reported that it showed disc protrusions in McQuay's lumbar spine.

[¶8.]     McQuay did not seek additional treatment for his low back until August 8, 2007, when McQuay saw Dr. Tim Watt for a "new complaint of low back pain with some pain going down into the left leg." Dr. Watt's records indicate McQuay's low back pain "came on fairly spontaneously" and did not "have any specific precipitator." A third MRI was performed on August 8, 2007. After reviewing the MRI image, Dr. Watt reported that it showed a "new protrusion left L4-5."

[¶9.]     A hearing was held before the Department of Labor on the limited issue of whether the original October 22, 2002 injury was a major contributing cause of McQuay's low back condition.[1] The Department ruled McQuay did not

---

1.     McQuay initially filed a petition for hearing with the Department on January 26, 2005. The issue before the Department at that time was whether McQuay was entitled to receive benefits for surgery on his upper back. The Department ruled in favor of McQuay. The Decision was appealed to the circuit court. On June 20, 2007, the circuit court affirmed the Department's decision. The parties then entered into a settlement agreement regarding

(continued . . .)

meet his burden of proving the original October 22, 2002 work injury was a major contributing cause of the low back condition McQuay has suffered from since 2005. The circuit court entered an order on March 24, 2011 affirming the decision of the Department.

**Standard of Review**

[¶10.] The standard of review for administrative appeals is controlled by SDCL 1-26-36. We review an agency's factual findings under the clearly erroneous standard. *See Williams v. S.D. Dept. of Agric.*, 2010 S.D. 19, ¶ 5, 779 N.W.2d 397, 400 ("[O]ur standard of review is controlled by SDCL 1-26-36, requiring us to give great weight to the findings of the agency and reverse only when those findings are clearly erroneous in light of the entire record."). However, "when 'an agency makes factual determinations on the basis of documentary evidence, such as depositions' or medical records," our review is de novo. *Darling v. W. River Masonry, Inc.*, 2010 S.D. 4, ¶ 10, 777 N.W.2d 363, 366-67 (quoting *Vollmer v. Wal-Mart Store, Inc.*, 2007 S.D. 25, ¶ 12, 729 N.W.2d 377, 382). Questions of law are also reviewed de novo. *Williams*, 2010 S.D. 19, ¶ 5, 779 N.W.2d at 400 (citing *Vollmer*, 2007 S.D. 25, ¶ 12, 729 N.W.2d at 382). "Mixed questions of law and fact require further analysis."

---

(. . . continued)

past-due temporary total-disability benefits. After McQuay filed another petition for hearing with the Department on April 18, 2008, the parties entered into a second settlement agreement. This settlement agreement addressed temporary total-disability benefits and impairment benefits for McQuay's neck condition. McQuay's neck and upper back condition are not at issue in this appeal.

*Darling*, 2010 S.D. 4, ¶ 10, 777 N.W.2d at 366 (quoting *McNeil v. Superior Siding, Inc.*, 2009 S.D. 68, ¶ 6, 771 N.W.2d 345, 347).

> If application of the rule of law to the facts requires an inquiry that is "essentially factual"-one that is founded "on the application of the fact-finding tribunal's experience with the mainsprings of human conduct"-the concerns of judicial administration will favor the [circuit] court, and the [circuit] court's determination should be classified as one of fact reviewable under the clearly erroneous standard. If, on the other hand, the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed de novo.

*Id.* (quoting *McNeil*, 2009 S.D. 68, ¶ 6, 771 N.W.2d at 347-48) (quoting *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir. 1984)).

**Analysis**

[¶11.]     In a workers' compensation proceeding, the claimant bears the burden of proving the facts "necessary to qualify for compensation by a preponderance of the evidence." *Id.* ¶ 11 (citing *Titus v. Sioux Valley Hosp.,* 2003 S.D. 22, ¶ 11, 658 N.W.2d 388, 390). "The fact that an employee may have suffered a work-related injury does not automatically establish entitlement to benefits for his current claimed condition." *Id.* (citing *Haynes v. McKie Ford,* 2004 S.D. 99, ¶ 17, 686 N.W.2d 657, 661). "The claimant must establish that his work-related injury is a major contributing cause of his current claimed condition and need for treatment." *Id.* (citing *Vollmer,* 2007 S.D. 25, ¶ 14, 729 N.W.2d at 382-83). *See also* SDCL 62-1-1(7)(a) ("No injury is compensable unless the employment or employment related activities are a major contributing cause of the condition complained of.").

[¶12.] We have emphasized, "[a] claimant need not prove his work-related injury is a major contributing cause of his condition to a degree of absolute certainty." *Id.* ¶ 12 (citing *Brady Mem'l Home v. Hantke,* 1999 S.D. 77, ¶ 16, 597 N.W.2d 677, 681). But the claimant must establish causation "to a reasonable degree of medical probability, not just possibility." *Id.* (citing *Truck Ins. Exch. v. CNA,* 2001 S.D. 46, ¶ 19, 624 N.W.2d 705, 709). "The evidence must not be speculative, but must be 'precise and well supported.'" *Id.* (quoting *Vollmer,* 2007 S.D. 25, ¶ 14, 729 N.W.2d at 382).

[¶13.] McQuay contends that his October 2002 injury was a major contributing cause of the low back problems he has experienced since 2005.[2] During the hearing before the Department, McQuay testified he suffered from continuous pain in his low back after the October 2002 injury. McQuay further testified his low back pain was always on his left side and down his left leg. McQuay did not recall suffering from an intervening injury that would have caused the low back problems he has experienced since 2005.

[¶14.] The Department found McQuay's testimony was not credible because it was inconsistent with medical evidence introduced during the hearing. McQuay testified in person at the hearing. Therefore, we review the Department's findings as to McQuay's credibility under the clearly erroneous standard. *Orth v. Stoebner & Permann Const., Inc.*, 2006 S.D. 99, ¶ 28, 724 N.W.2d 586, 592 (citing *Brown v. Douglas Sch. Dist.*, 2002 S.D. 92, ¶ 9, 650 N.W.2d 264, 267-68).

---

2. There is no dispute McQuay suffered a compensable work-related injury to his lower back on October 22, 2002.

[¶15.]     One of the medical records introduced into evidence was a January 24, 2003 record in which Dr. Simonson indicated McQuay was "doing well regarding his low back" and his "[l]ow back is doing good." After visiting Dr. Simonson on January 24, 2003, the record indicates McQuay did not report experiencing low back problems again until June 30, 2005, when he visited the Rapid City Community Health Center complaining of "left lower back pain radiating into the left thigh and upper calf."

[¶16.]     McQuay visited Dr. Dietrich on August 5, 2005. Dr. Dietrich's records indicate McQuay reported a "recurrence of low back pain with no known injury." Dr. Dietrich's records also indicate that McQuay experienced low back pain in 2002 and 2003, but that this pain "resolved." This medical evidence conflicts with McQuay's testimony that he has experienced continuous low back pain since the October 22, 2002 injury.

[¶17.]     During the hearing, McQuay also testified his lower back pain was always on the left side of his lower back. McQuay testified he had never had problems with the right side of his low back. However, medical evidence introduced at the hearing did not support McQuay's testimony. For example, (1) Dr. Anderson's October 30, 2002 record states McQuay's low back pain was primarily on the right side; (2) Dr. Anderson's December 9, 2002 record states McQuay was experiencing right-sided L5 radiculopathy; (3) a physical therapy record from Promotion Rehabilitation Center dated November 6, 2002, indicates McQuay had increased muscle tone on the right low back; and (4) a record from Black Hills Imaging Center dated November 25, 2002 contains a pain diagram in which

McQuay indicated he was experiencing pain on the lower right-hand side of his lumbar spine.

[¶18.] McQuay was presented with these medical records on cross-examination. He was also presented with other medical records indicating that he had experienced back pain on the right side of his lower back prior to 2005. After being presented with this evidence, McQuay admitted he suffered from low back pain on the right side following the October 22, 2002 accident.

[¶19.] McQuay did not testify consistently during the hearing. His testimony was also contrary to the bulk of the medical evidence. After reviewing McQuay's testimony and the medical evidence in the record, we hold the Department's finding regarding McQuay's credibility was not clearly erroneous.

[¶20.] In finding McQuay's October 2002 injury was not a major contributing cause of the low back problems he experienced since 2005, the Department considered the deposition testimony of several medical professionals. We have stated, "[t]he testimony of medical professionals is crucial in establishing the causal relationship between the work-related injury and the current claimed condition 'because the field is one in which laypersons ordinarily are unqualified to express an opinion.'" *Darling*, 2010 S.D. 4, ¶ 13, 777 N.W.2d at 367 (quoting *Vollmer*, 2007 S.D. 25, ¶ 14, 729 N.W.2d at 382). Because the medical testimony the Department considered was presented through deposition, we review the Department's findings regarding this testimony de novo. *Id*. ¶ 14 (citing *Vollmer*, 2007 S.D. 25, ¶ 12, 729 N.W.2d at 382).

[¶21.]     The Department considered the deposition testimony of Dr. Jeff Luther, who works as the medical director for WorkFORCE Occupational Health and Medical Services. Dr. Luther conducted an independent medical evaluation of McQuay and concluded the October 2002 work injury was not a major contributing cause of the low back condition McQuay reported experiencing in 2005 and thereafter. As the medical director of WorkFORCE Occupational Health and Medical Services, Dr. Luther regularly reviews and interprets MRI images. Dr. Luther compared three MRI images of McQuay's lower back. The MRIs were taken in 2002, 2005 and 2007. Dr. Luther observed significant differences between the 2002 and 2005 MRI images. The 2002 MRI image showed McQuay had a normal lumbar spine. However, Dr. Luther found several lumbar protrusions on the 2005 MRI image that did not appear on the 2002 MRI image.

[¶22.]     Dr. Luther also reviewed McQuay's medical records and concluded that, prior to June 2005, McQuay was experiencing back pain on the right side of his low back. But in June 2005, McQuay began reporting that he was experiencing pain on the left side of his low back. After reviewing McQuay's medical records, Dr. Luther opined, within a reasonable degree of medical probability, that McQuay's October 2002 injury was not a major contributing cause of the low back problems McQuay has experienced since June 2005.

[¶23.]     Dr. John Dowdle also reviewed McQuay's medical records and opined, within a reasonable degree of medical probability, that the October 2002 work injury was not a major contributing cause of the low back condition McQuay has experienced since June 2005. Dr. Dowdle based his opinion upon the MRI reports

from 2002, 2005 and 2007. He noted that the 2002 MRI report indicated McQuay's low back was normal. However, the 2005 MRI report indicated there was "a small left disc protrusion at L4-5." Dr. Dowdle opined that this disc protrusion "is consistent with a degenerative disc that had developed over the years at that level." Dr. Dowdle concluded that the "small left disc protrusion at L4-5" was the cause of the low back pain McQuay has experienced since 2005 and that the October 2002 injury was not a major contributing factor to these degenerative changes in McQuay's low back.

[¶24.]     Dr. Dietrich disagreed with the opinions of Drs. Luther and Dowdle. He conducted a review of McQuay's medical records and concluded that the October 2002 work injury was a major contributing cause of McQuay's low back condition. McQuay argues the Department erred in accepting the testimony of Drs. Luther and Dowdle over the testimony of Dr. Dietrich, who personally treated McQuay. We disagree.

[¶25.]     Dr. Dietrich based his opinion, in part, upon the fact that he was unaware of any other intervening cause for McQuay's low back problems. But Dr. Dietrich admitted on cross-examination that there did not need to be an identifiable cause for disc bulges, protrusions, or herniations. He admitted McQuay had approximately a 30% chance of developing disc problems based on his age alone and that this risk increased with McQuay's nicotine use, which started at age 11 or 12. Moreover, in forming his opinion, Dr. Dietrich did not review the 2002 or 2005 MRI images. He also did not account for medical evidence indicating that prior to June

2005, McQuay's back pain was on the right side of his low back while McQuay's complaint at the time of the hearing was for low back pain on the left side.

[¶26.]     Our de novo review of the conflicting medical testimony in this case leads us to agree with the Department's findings.  The testimony of Drs. Luther and Dowdle is consistent with the medical evidence.  Moreover, Dr. Luther was the only medical expert to comparatively examine each of the MRI images from 2002, 2005 and 2007.  Because McQuay failed to establish by a preponderance of the evidence that the October 2002 injury was a major contributing cause of his current low back condition, we affirm the circuit court's denial of workers' compensation benefits.

[¶27.]     Affirmed.

[¶28.]     GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and SABERS, Retired Justice, concur.

[¶29.]     SABERS, Retired Justice, sitting for WILBUR, Justice, disqualified.